969 F.2d 1530
 140 L.R.R.M. (BNA) 2835, 122 Lab.Cas. P 10,300,
15 Employee Benefits Cas. 2253
 Kermit A. ANGST, Robert M. Cesanek, Sr., Rocco J. Corona,
Jr., Chris Donatelli, Dale J. Eisenhauer, Frank W. Hanzl,
Dennis R. Helfrich, Robert E. Keck, Daniel D. Kostelnick,
Randall S. Lawler, Jr., Gary M. Madaus, James L. Marino,
Arthur E. Marshall, James M. Mindock, Thomas C. Shappell
v.
MACK TRUCKS, INC., William C. Craig, Robert E. Kendall,
Individually and as Administrators of the Severance Plan of
December 18, 1989, the International Union of United
Automobile, Aerospace and Agricultural Implement Workers of
America, Local # 677,
Stephen T. Hawk, Robert M. STASKO
v.
MACK TRUCKS, INC., the International Union of United
Automobile, Aerospace and Agricultural Implement Workers of
America, Local # 677, William C. Craig, Robert E. Kendall,
Individually and as Administrators of the Severance Plan of
December 18, 1989,
David SHEARER
v.
MACK TRUCKS, INC., William C. Craig, Robert E. Kendall,
Individually and as Administrators of the
Severance Plan of December 18, 1989,
Kermit A. Angst, Robert M. Cesanek, Sr., Rocco J. Corona,
Jr., Chris Donatelli, Dale J. Eisenhauer, Frank W. Hanzl,
Dennis Helfrich, Robert E. Keck, Daniel D. Kostelnick,
Randall S. Lawler, Jr., Gary M. Madaus, James L. Marino,
Arthur E. Marshall, James M. Mindock, Thomas C. Shappell,
Stephen T. Hawk, Robert M. Stasko and David Shearer,
Appellants in No. 91-1791,
Mack Trucks, Inc., Appellant in No. 91-1843.
 Nos. 91-1791 and 91-1843.
 United States Court of Appeals,
Third Circuit.
 Argued April 10, 1992.
Decided July 21, 1992.
Rehearing and Rehearing En Banc Denied Aug. 17, 1992.
 
 Alan B. Epstein (argued), Jablon, Epstein & Wolf, Philadelphia, Pa., for appellants/cross appellees, Angst, Cesanek, Sr., Corona, Jr., Donatelli, Eisenhauer, Hanzl, Helfrich, Keck, Kostelnick, Lawler, Jr., Madaus, Marino, Marshall, Mindock, and Shappell.
 David M. Spitko (argued), Wallace B. Eldridge, III, Duane, Morris & Heckscher, Allentown, Pa., for appellants/cross appellees, Hawk, Stasko and Shearer.
 Anthony B. Haller (argued), Susan Katz Hoffman, Susan K. Lessack, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellee/cross appellant Mack Trucks, Inc.
 Before: BECKER, COWEN, and GARTH, Circuit Judges.
 OPINION OF THE COURT
 GARTH, Circuit Judge:
 
 
 1
 In this appeal, we must determine the law to apply to a suit brought by employees of Mack Trucks, Inc., ("Mack"), who allege that Mack breached its contractual obligation, under a "buyout plan," to pay departing employees a lump sum of $75,000 and a year of continued benefits in exchange for the employees voluntarily leaving Mack's employ.
 
 
 2
 The district court applied state contract law in holding that Mack's buyout plan constituted a contract with accepting employees, which had been breached. We agree with the district court that the buyout plan, which did not require the creation of a new administrative scheme, did not implicate the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq, ("ERISA"). However, because the buyout plan resulted from negotiations between Mack and the employees' union ("union") over modifications to their collective bargaining agreement, we hold, contrary to the district court, that federal labor law preempts the employees' state law claims. We further hold that, under federal labor law, the employees may not yet bring their grievances to federal court because they have failed to exhaust their collective bargaining agreement's grievance procedures.
 
 
 3
 We will therefore vacate the district court's order which directed a verdict in favor of the employees with respect to their state law contract claims, and we will vacate the district court's order dated May 28, 1991 which established the employees' damages. We will also affirm the district court's order which directed a verdict in favor of Mack with respect to the employees' ERISA claim, and we will remand this case to the district court with instructions to dismiss the employees' complaint for failure of the employees to exhaust internal grievance procedures required by their collective bargaining agreement and by federal labor law.
 
 I.
 
 4
 In 1989, the management of Mack decided that economic conditions required the dismissal of Engineering Department employees. Mack recognized, however, that such layoffs would violate its collective bargaining agreement ("CBA") with the union. That CBA, negotiated in 1987, guaranteed continued employment for the 388 members of the union's Engineering Bargaining Unit ("EBU") until the CBA's expiration on October 27, 1992.
 
 
 5
 Acknowledging that the CBA could be modified only through negotiations with the union, Mack arranged a meeting with union representatives. Ensuing discussions resulted in an agreement that satisfied both parties. Under this agreement, the sixty-nine most senior employees to voluntarily leave Mack's employ would receive a lump-sum payment of $75,000 and one year of continued benefits.
 
 
 6
 On December 18, 1989, the union held a meeting at which it presented the buyout plan to EBU members. Pursuant to an apparent agreement with Mack, the union did not inform its members of the buyout plan's 69-employee limit. Instead, the union implied that the buyout plan was available to all employee applicants.[1] At a second meeting on December 20, 1989, a union representative and a Mack representative answered questions about the buyout. Again, the employees were not told about the buyout plan's numerical limit.
 
 
 7
 A total of 144 members submitted applications for the buyout before the January 3, 1990 deadline. In light of the unexpectedly large response, the union asked Mack to consider exceeding the agreed-upon 69-employee limit. After some discussion, Mack agreed to permit an additional eight people to participate in the buyout, bringing the total of employees to be bought out to seventy-seven. On January 8, 1990, Mack and the union held a joint meeting at which they notified those applicants who did not meet the seniority qualifications that they could not participate in the buyout.
 
 
 8
 Although the CBA contained a broad, mandatory grievance and arbitration procedure for the resolution of employer-employee disputes, eighteen applicants whose applications did not meet the seniority cutoff eschewed that procedure and instead brought suit in federal court against Mack, several Mack officials, and the union. The employees contended that Mack had breached its contractual obligation to provide each of them with a lump-sum $75,000 payment and benefits in exchange for their voluntary departure from Mack, and that the union, through its complicity with Mack in the buyout plan, had breached its duty of fair representation. Of the eighteen employees who brought suit, five voluntarily left Mack in 1990 in favor of other employment, two voluntarily retired, and eleven remained at Mack until March of 1991, when they participated in a subsequent negotiated buyout and received lump sum payments of $58,000 each.
 
 
 9
 The employees' complaint contained several alternate theories of relief, including claims under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185; ERISA; 29 U.S.C. § 1001 et seq.; state contract law; and state and federal tort law. After considering these various theories, the district court rejected the applicability of labor law, tort law and ERISA. Instead, the court held that Mack had entered into individual contracts with each of the plaintiff employees and that Mack had breached those contracts. The court therefore granted a directed verdict in the employees' favor on their state law breach-of-contract claim and dismissed the employees' claims against the union.
 
 
 10
 The case was tried before a jury, with the measure of damages as the only unresolved issue. At the close of all evidence, the district court instructed the jury to calculate the value of the buyout plan with respect to each employee by determining the value of the plan's payout (i.e., $75,000 plus some figure for benefits), and then subtracting from that figure the value of the CBA's guarantee of continued employment, which the buyout plan had required the employees to relinquish. The judge emphasized that damages must be assessed as of the date of Mack's breach, January 8, 1990. The judge also told the jury that the $58,000 payment received by eleven of the plaintiffs in a subsequent buyout was a proper setoff from damages.
 
 
 11
 The jury awarded $4,150 to each of the eleven employees who had stayed at Mack and who had subsequently been bought out for $58,000. Two of the remaining employees received $83,700 each; two received $82,500 each; one received $73,025; one received $78,350; and one received $80,100.[2]
 
 
 12
 Both parties filed post-trial JNOV motions. Mack also filed motions for reconsideration and for a new trial. In their post-trial motion, the employees asked the court to reconsider its holding that the buyout plan had not implicated ERISA. The employees also challenged the court's jury instruction on damages because, in the employees' view, the judge had improperly suggested that post-breach wages earned by the employees who had remained at Mack should be set off from those employees' awards.
 
 
 13
 In an order and opinion of August 26, 1991, the court rejected the employees' motion for JNOV and reiterated its holding that ERISA only applied to plans which, unlike the buyout plan in the present case, had been created for the purpose of providing ERISA benefits and which had required the establishment of an administrative scheme. The court also declined to reconsider its jury instruction because, in the court's view, the employees had waived that issue by not raising it at the time that the jury was charged.
 
 
 14
 Mack, in its post-trial motions, argued that the district court had erred in not applying federal law to the employees' complaint and that, accordingly, the district court should have dismissed the employees' suit in its entirety because the employees had failed to exhaust the CBA's internal grievance procedures before filing suit in federal court. Mack also argued that the evidence regarding the employees' damages had been insufficient to go to the jury.
 
 
 15
 In response, the district court, in denying Mack's motions, again held that the proposed buyouts had constituted contracts between Mack and individual employees rather than collectively bargained labor agreements, and that federal labor law therefore did not apply. The judge also held that the jury had been presented with sufficient evidence with which to render a verdict.
 
 
 16
 The employees filed a timely notice of appeal, to which Mack filed a timely cross-appeal. They raise before us the issues raised in their post-trial motions.
 
 II.
 
 17
 We have appellate jurisdiction over the district court's August 26, 1991 order and opinion pursuant to 28 U.S.C. § 1291. Our standard of review is plenary.
 
 
 18
 The employees, in their action against Mack, invoked federal jurisdiction under ERISA and the Labor Management Relations Act ("LMRA"), as well as the laws of the Commonwealth of Pennsylvania.[3] The district court, however, held that neither the LMRA nor ERISA applied, and instead went on to decide the case under state contract law.
 
 
 19
 As discussed below, and unlike the district court, we hold that the LMRA applies to the present case. Federal jurisdiction was therefore properly invoked by the employees under section 301 of the LMRA, 29 U.S.C. § 185. We observe, however, that if the district court had been correct in its holding that ERISA and federal labor law did not apply to this case, then the employees would have had no federal cause of action. In such a case, where the district court had concluded that the employees had no viable federal cause of action, the district court should have either dismissed the complaint or transferred the action to the Pennsylvania Court of Common Pleas pursuant to 42 Pa.Cons.Stat.Ann. § 5103(b).[4] See Weaver v. Marine Bank, 683 F.2d 744, 746 (3d Cir.1982). Instead, the district court issued a decision on the merits of the employees' state law contract claims. It did so despite this court's established rule that "once all federal claims have been dropped from a case, the case simply does not belong in federal court." Lovell Mfg. v. Export-Import Bank of the United States, 843 F.2d 725 (3d Cir.1988). See also United Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").
 
 
 20
 Therefore, if we agreed with the district court that federal law did not control this case, we would be obliged to remand this case to the district court to dismiss the complaint or transfer the complaint to the Pennsylvania state court. However, holding, as we do, that the district court erred in ignoring the dictates of federal labor law, and determining, therefore, that the employees' complaint properly invoked section 301 of the LMRA, we will instead vacate the district court's orders and remand with instructions that the district court dismiss the employees' complaint on the grounds that the employees have failed to exhaust their CBA's internal grievance procedures.
 
 III.
 A.
 
 21
 In their complaint, the employees conceded that the buyout plan at issue in the present case resulted from negotiations between Mack and the union:
 
 
 22
 30. Plaintiffs, and each of them, at all times applicable hereto, were members in good standing of the United Auto Workers Union, Local 677, and were employed by Mack in the Engineering Bargaining Unit at the defendant's Allentown facility.
 
 
 23
 31. On or about December 18, 1989, defendant Mack, following collective bargaining as to the terms thereof with the [union], offered to 'all active Engineering Bargaining Unit Personnel' the option of voluntary termination from employment with Mack in accordance with the terms set forth in a [buyout plan]....
 
 
 24
 (A. 1572) (emphasis added). The buyout plan therefore constituted a collectively bargained agreement which modified the 1987 CBA's no-layoff provision. The employees also conceded in their complaint that the gravamen of their grievance against Mack, the non-disclosure of the buyout plan's numerical limit, resulted from the self-same collective bargaining between Mack and the union:59. [Mack and the union] were aware prior to offering the Severance Plan to each plaintiff that defendant Mack only intended to complete payment to "some" members of the Engineering Bargaining Unit and fraudulently induced plaintiffs herein to accept the offer to their great detriment.
 
 
 25
 (A. 1577).
 
 
 26
 Supreme Court precedent unequivocally instructs us to resolve disputes concerning collectively bargained labor agreements pursuant to federal labor law rather than state law. Interpreting section 301(a) of the Labor Management Relations Act,[5] the Supreme Court has held that federal law preempts state law "if the resolution of a state-law claim depends upon the meaning of a collective bargaining agreement," Lingle v. Norge Div. of Magic-Chef, Inc., 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), or if the claims proffered by the plaintiffs "substantially depend upon analysis of the terms of an agreement made between parties in a labor contract." Allis Chalmers Corp. v. Lueck, 471 U.S. 202, 220, 105 S.Ct. 1904, 1916, 85 L.Ed.2d 206 (1985). Applying this standard, we agree with Mack that, on the face of the employees' complaint alone, resolution of the employees' claims against Mack requires interpretation of the CBA and of any subsequent modifications to the CBA.
 
 
 27
 The district court purported to resolve the dispute between the employees and Mack without examining or interpreting any of the collectively bargained agreements between Mack and the union. However, ignoring those agreements displaces the role that unions play as the exclusive lawful representatives of their members. The LMRA provides:
 
 
 28
 Representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the exclusive representatives of all the employees in such unit for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, or other conditions of employment.
 
 
 29
 29 U.S.C. § 159(a).
 
 
 30
 In the context of the buyout plan negotiations, therefore, Mack could bargain only with the union and not with the individual employees concerning a modification of the CBA's layoff provision--a provision constituting a condition of employment. The employees in their complaint tacitly recognize this principle of exclusive representation by their reference to the LMRA, which, as noted above, expressly provides that negotiations must be conducted only between the company and the union.[6] Their complaint, among other allegations, recites:
 
 
 31
 65. Defendants [union] and Mack wrongfully and intentionally conspired to violate the provisions of the LMRA, 29 U.S.C. § 141, et seq., by engaging in an unfair labor practice in that they acted in concerted action to deny to plaintiffs the terms and conditions of employment to which they were entitled.
 
 
 32
 66. Defendant [union] violated the provisions of the LMRA, 29 U.S.C. § 141, et seq., by denying to plaintiffs fair and unbiased representation as their collective bargaining representative.
 
 
 33
 (A. 1578).
 
 
 34
 Thus, the employees may only prevail against Mack if they demonstrate that Mack violated the terms of its agreements with the union. It is clearly apparent that such a violation as the employees allege, if one occurred, cannot be identified without resort to, and examination of, Mack's CBA and any of its modifications.
 
 
 35
 The employees cite several cases in which the Supreme Court and this court have allowed employees to bring actions against employers solely under state law without federal labor law preemption of their state law claims. See Caterpillar, Inc. v. Williams, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987); Berda v. CBS, Inc., 881 F.2d 20 (3d Cir.1989); Malia v. RCA Corp., 794 F.2d 909 (3d Cir.1986); Medlin v. Boeing Vertol Co., 620 F.2d 957 (3d Cir.1980). However, those cases are inapposite, as they all involved state law claims that arose at a time when the aggrieved employees were not represented by a union and thus were not subject to collectively bargained labor agreements. By contrast, in the present case the employees' grievances stem from negotiations between Mack and their union over a mandatory subject of bargaining--layoffs--which are a condition of employment.[7] We therefore hold, contrary to the district court, that federal labor law governs this case.
 
 B.
 
 36
 Under federal labor law, aggrieved employees must exhaust their CBA's grievance and arbitration procedures before filing a complaint in federal court "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." See United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). See also Republic Steel Corp. v. Maddox, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965); Griesmann v. Chemical Leaman Tank Lines, Inc., 776 F.2d 66 (3d Cir.1985).
 
 
 37
 The CBA in the present case contained an extremely broad, mandatory grievance and arbitration procedure to be utilized "in the event that any employee has a grievance or any group of employees have a grievance." Under these procedures, an aggrieved employee must first discuss his grievance with his immediate supervisor. If discussions at that level fail to resolve the dispute, the employee may appeal to the Corporate Director of Labor Relations. Following that appeal, he may then, with the union's cooperation, proceed to arbitration. (A. 984-91). The CBA expressly empowers the arbitrator to interpret and apply the CBA "and any other agreement which the parties may enter into supplemental thereto." (A. 988). The instant "buyout plan" falls well within the category of such a supplemental agreement.
 
 
 38
 In light of the grievance procedures' broad scope, we are satisfied that federal labor law requires that these procedures, including arbitration, be exhausted before employee grievances involving terms of a collectively bargained labor agreement may be heard in federal court. Once a federal court's jurisdiction has been properly invoked after exhaustion of the CBA's grievance procedure, the federal court then may exercise a very limited review of the arbitrator's decision. See Griesmann, 776 F.2d at 73. Because the Mack employees ignored and failed to resort to their CBA's dispute-resolution procedures, the district court was obliged to dismiss their suit.
 
 
 39
 The employees have attempted to blame the union for the employees' own failure to exhaust the CBA's grievance procedures. They argued that the union had expressed an unwillingness to pursue the employees' grievances. However, although a union's failure to pursue a grievance may, in some cases, excuse exhaustion, see Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 563, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976), here the employees have not even attempted to invoke those stages of the grievance procedure that concededly do not require union cooperation, such as grieving with an immediate supervisor and appealing to the Corporate Director of Labor Relations. (A. 984-86). Thereafter, an employee could attack the union's inactions on his behalf. The union's constitution contains a binding internal complaint procedure under which members may challenge the union's actions or inactions and may even obtain damages as a remedy. (A. 1484-92). Under the terms of the union's constitution, this internal complaint procedure must be exhausted before members may bring a complaint against the union in federal court:
 
 
 40
 Section 5. OBLIGATION TO EXHAUST INTERNAL UNION REMEDIES. It shall be the duty of any individual or body, if aggrieved by any action, decision or penalty imposed, to exhaust fully the individual or body's remedy and all appeals under this Constitution and the rules of this Union before going to a civil court or governmental agency for redress.
 
 
 41
 (A. 1491-92). See also Clayton v. Int'l Automobile Workers, 451 U.S. 679, 692, 101 S.Ct. 2088, 2096, 68 L.Ed.2d 538 (1981). No such challenge was ever mounted by any of the employees.
 
 
 42
 In addition, the employees have not objected to the district court's dismissal of their claims against the union, so there is no way in this action or on this appeal that the employees may, at this time, pursue any allegations of union misconduct. The employees may not avoid dismissal of their complaint as to Mack by impugning the conduct of a party--here, the union--who is no longer a party to this case.
 
 IV.
 
 43
 The employees also argue that the buyout plan, which would have provided an initial lump-sum payment of $75,000 followed by one year of continued benefits, constituted an ERISA plan. If the buyout plan did implicate ERISA, then questions concerning the interaction between ERISA and the LMRA, as implicated in collective bargaining agreements, would arise. However, we are satisfied that the buyout plan did not qualify as an ERISA plan under the test established in Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987).
 
 
 44
 In Fort Halifax, the Supreme Court held that severance benefits do not implicate ERISA unless they require the establishment and maintenance of a separate and ongoing administrative scheme. Moreover, the Court held that "[t]he requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme.... To do little more than write a check hardly constitutes the operation of a benefit plan." Id. at 12, 107 S.Ct. at 2218. Clearly, in the present case, the simple disbursement of $75,000 to each employee applicant would require no ongoing administrative scheme.
 
 
 45
 As for the year of continued benefits, the district court in the present case found that "[t]o the extent the buyout required ongoing administration of benefits, that administration occurred pursuant to a duly constituted benefits plan that already existed under the Collective Bargaining Agreement." (A. 36). This factual determination by the district court was not clearly erroneous. Indeed, the employees have conceded that the buyout "would be administered in the same way as the benefits provided to active employees." (Appellants' Brief at 24). Because the buyout plan's provision of a year of continued benefits, like that plan's provision for a one-time lump-sum payment, did not require the creation of a new administrative scheme, and did not materially alter an existing administrative scheme, Fort Halifax instructs that the buyout plan did not implicate ERISA.
 
 
 46
 Although the Fifth Circuit opinion in Wells v. General Motors Corp., 881 F.2d 166 (5th Cir.1989), is inapposite in many respects, see supra note 7, Wells is instructive with respect to its ERISA discussion. Like the present case, Wells involved a buyout plan which the plaintiff-employees in that case sought to characterize as an employee benefit plan within the meaning of ERISA. Relying on the teaching of Fort Halifax, the Wells court held that the buyout plan there under consideration did not implicate ERISA because it did not provide a set of administrative practices and did not require the establishment of an administrative scheme. As the court there concluded, "[t]he facts that GM made the payments pursuant to a Voluntary Termination of Employment 'Plan ' and that the employees received a benefit do not convert the plan into an 'employee benefit plan' for purposes of ERISA." Id. at 176 (emphasis in original).
 
 
 47
 The ERISA conclusion reached by Wells was bolstered by another Fifth Circuit decision rendered three years later in Fontenot v. NL Industries, 953 F.2d 960 (5th Cir.1992). In Fontenot, a plan strikingly similar to the Mack plan considered here was held not to be a "plan" within the meaning of ERISA. Fontenot's complaint had charged that his employer, NL Industries, had violated ERISA by excluding him from a senior executive severance plan. The Fontenot plan had provided for a lump sum cash payment "as well as a three year continuation of certain benefits" to executives terminated within two years of a change of corporate control. Id. at 961.
 
 
 48
 The Fifth Circuit, relying on Fort Halifax and the ERISA holding in Wells, affirmed the district court's summary judgment in favor of NL Industries. In doing so, the court emphasized that the one-time obligation of NL Industries to provide a severance payment to departing employees had not necessitated the creation of an ongoing administrative scheme and therefore had not implicated ERISA under the Fort Halifax test. In sustaining the district court's judgment, the Fontenot court discussed our own decision in Pane v. RCA Corp., 868 F.2d 631, 635 (3d Cir.1989). In Pane, we affirmed a district court's determination that the buyout plan at issue in that case had required an administrative scheme and had therefore implicated ERISA. The Fontenot court distinguished Pane, as we do, on the grounds that Pane involved a plan which, unlike the Fontenot and Mack plans, required the creation of an administrative apparatus that would analyze each employees' situation in light of particular criteria.
 
 
 49
 In addition to its provision for a one-time payment, the Fontenot plan, like the Mack plan, provided for the "continuation of certain benefits." Id. at 961. The Fontenot court did not discuss this "continuation" feature of the plan, obviously because the continuation of benefits would be administered under a pre-existing administrative scheme which would remain unaffected by the buyout plan, and therefore, like the one-time severance payment, would not require the creation of a new administrative scheme. Thus, as in the instant case, neither the one-time payment, nor the continuation of existing benefits, nor a combination of both, invoked the application of ERISA under the Fort Halifax test.
 
 
 50
 Judge Becker, writing in dissent, argues that ERISA governs Mack's buyout plan because even though the buyout plan creates no new administrative scheme, the entitlement of employees to benefits under the buyout plan stems from the existing administrative scheme for benefits under the CBA. We disagree.
 
 
 51
 The Fort Halifax court explained that the purpose of ERISA preemption is to allow employers to adopt a uniform distribution scheme unimpeded by conflicting state and federal regulations:
 
 
 52
 A patchwork scheme of regulation would introduce considerable inefficiencies in benefit program operation, which might lead those employers with existing plans to reduce benefits, and those without such plans to refrain from adopting them. Pre-emption ensures that the administrative practices of a benefit plan will be governed by only a single set of regulations.
 
 
 53
 482 U.S. at 11, 107 S.Ct. at 2217. Contrary to Judge Becker's reading of our holding, see concurring opinion at 1542-43, we do not here impose "two sources of law" on Mack's existing employee benefits plan. We merely hold that the threshold question of whether the employees are entitled to a year of continued benefits does not itself implicate ERISA. While ERISA would concededly preempt state legislation which purported to regulate existing employee benefits plans, ERISA does not apply to buyout plans, such as the buyout plan in the present case, which provide for the continuation of benefits to which the departing employees had already been entitled under an existing plan. Of course, if the employees are found, under federal labor law, to be entitled to a year of continued benefits, those benefits themselves would continue to be governed, as they always have been, by ERISA.
 
 
 54
 Judge Becker's argument depends wholly upon the Fort Halifax analysis of Standard Oil Co. v. Agsalud, 633 F.2d 760 (9th Cir., 1980), summarily aff'd, 454 U.S. 801, 102 S.Ct. 79, 70 L.Ed.2d 75 (1981). However, the facts in Agsalud are in sharp contrast to the facts here, making the Agsalud analysis inapplicable to the issue which we must decide. Agsalud involved Hawaii's comprehensive Pre-paid Health Care Act, which required employers in that state to provide their employees with specific health benefits, thus presenting a conflict between the Hawaii statute at issue and the employer's benefit plan. After reviewing the requirements of Hawaii's statute, the Ninth Circuit held that the statute was preempted by ERISA.
 
 
 55
 In Fort Halifax, the Supreme Court explained that the Hawaii statute at issue in Agsalud was preempted by ERISA only because the employer/plaintiff in Agsalud already had in place an employee benefits plan, governed by an existing administrative scheme, which conflicted in several material respects from the requirements of the Hawaii act. Thus, unlike the facts in the instant case, Agsalud involved a state law that purported to significantly alter existing ERISA plans. The Supreme Court explained the problem posed by Hawaii's statute as follows:
 
 
 56
 First, the employer in [Agsalud ] already had in place a health care plan governed by ERISA, which did not comply in all respects with the Hawaii Act. If the employer sought to achieve administrative efficiencies by integrating the Hawaii plan into its existing plan, different components of its single plan would be subject to different requirements. If it established a separate plan to administer the program directed by Hawaii, it would lose the benefits of maintaining a single administrative scheme. Second, if Hawaii could demand the operation of a particular benefit plan, so could other States, which would require that the employer coordinate perhaps dozens of programs.
 
 
 57
 482 U.S. at 13, 107 S.Ct. at 2218. Because the Mack buyout plan presents no conflict with the existing administrative benefits scheme and makes no material change in that scheme, any analysis derived from the Agsalud decision cannot inform our determination.
 
 
 58
 Just as the "plans" of Fort Halifax, Wells and Fontenot were not deemed plans within the meaning of ERISA, so too, as we have stated, the plan which modified Mack's CBA cannot be considered an ERISA plan. Because the continued disbursement of benefits and the one-time lump-sum payment under the instant Mack plan did not require the creation of a new administrative scheme and did not impose new administrative requirements on an existing administrative scheme, but rather simply required the continuation of an existing procedure, we agree with the district court that the buyout plan did not constitute an ERISA plan as measured by the test of Fort Halifax.
 
 V.
 
 59
 The employees have also argued that the district court erred in its jury instructions because it improperly directed the jury to set off wages earned by those employees who remained at Mack against the amount the employees would have received under the buyout plan. Mack contends that the jury instructions were appropriate and that this issue was never properly preserved for appeal.
 
 
 60
 In light of our holding that the district court should have dismissed the employees' complaint, and that the employees must resort to the grievance procedures of the CBA for their desired relief, we have no reason to address this issue. For the same reason, we decline to address Mack's alternative argument that several of the employees had failed to present evidence of damages.
 
 VI.
 
 61
 We will vacate the district court's order which directed a verdict in favor of the employees with respect to their state law contract claim, and we will vacate the district court's order dated May 28, 1991 establishing the employees' damages. We will also affirm the district court's order which directed a verdict in favor of Mack with respect to the employees' ERISA claim, and we will remand this case to the district court with instructions to dismiss the employees' complaint for failure to exhaust the CBA's grievance procedures as required by federal labor law.[8] Costs shall be taxed against the employees.
 
 
 62
 BECKER, Circuit Judge, concurring in the judgment.
 
 
 63
 I join in Judge Garth's excellent opinion except as to Part IV, wherein I believe the majority misinterprets the test for determining whether an employee benefit plan exists under ERISA. I concur in the judgment because, just as Judge Garth demonstrates with respect to the § 301 claim, plaintiffs were required, but failed, to exhaust the grievance and arbitration procedures before bringing suit under ERISA.
 
 
 64
 I. DETERMINING WHETHER AN EMPLOYEE BENEFIT PLAN EXISTS
 
 
 65
 In Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), the Supreme Court considered the question whether a Maine law requiring employers to make one-time severance payments to its employees in the event of a plant closing constituted an employee benefit plan under ERISA. In order to answer that question, the Court looked to the purpose of ERISA preemption and reasoned that Congress intended ERISA preemption as a means of establishing a uniform administrative scheme for the provision of employee benefits. Recognizing that the need for administrative uniformity arises only when the distribution of benefits requires ongoing administration, the Court explained that an employer's provision of benefits implicates ERISA only when it requires an ongoing administrative scheme. 482 U.S. at 11, 107 S.Ct. at 2217. Because a one-time payment of severance benefits does not require ongoing administration, the Court concluded that the severance payments did not constitute an employee benefit plan under ERISA.
 
 
 66
 Fort Halifax teaches that the crucial factor is the need for ongoing administration. The majority acknowledges, as it must, that the buyout plan requires ongoing administration during the year that benefits are continued. See Majority Opinion at 1538 (observing that benefits due under the buyout plan are to be administered under Mack's existing benefit plan). Nevertheless, the majority concludes that the buyout plan is not an employee benefit plan because it does not require Mack to create a new administrative scheme for the disbursement of these benefits.
 
 
 67
 With all respect, the majority bases its conclusion on a misreading of Fort Halifax. According to the majority, Fort Halifax held that the provision of benefits does not constitute an employee benefit plan unless it "require[s] the establishment and maintenance of a separate and ongoing administrative scheme," Majority at 1538 (emphasis added). In fact, Fort Halifax held that the statute at issue did not implicate ERISA because it "neither establishes, nor requires an employer to maintain" an ongoing administrative scheme. 482 U.S. at 12, 107 S.Ct. at 2218 (emphasis added).
 
 
 68
 The concern for administrative uniformity arises whenever the distribution of benefits requires on ongoing administrative scheme, regardless of whether that scheme is newly established or part of a pre-existing plan. Indeed, the Fort Halifax Court elucidated this very point in its extensive discussion of Standard Oil Co. v. Agsalud, 633 F.2d 760 (9th Cir.1980), summarily aff'd, 454 U.S. 801, 102 S.Ct. 79, 70 L.Ed.2d 75 (1981).
 
 
 69
 Agsalud involved a Hawaii law that required employers to provide their employees with a comprehensive health care plan. The employer in that case already provided health care benefits pursuant to a plan that was governed by ERISA, but that plan did not comply fully with the state statute. In Fort Halifax, the Court observed that if the employer in Agsalud integrated the newly required plan into its existing plan, "different components of its single plan would be subject to different requirements." 482 U.S. at 13, 107 S.Ct. at 2218. On the other hand, if the employer established a second plan to administer the benefits required by the state law, it would lose the advantages of maintaining a single administrative scheme. Id. Moreover, if one state could require a particular benefit plan, so could others, thus requiring employers to coordinate a number of plans. Id.
 
 
 70
 Summarizing Agsalud, which held that ERISA preempted the state law, the Fort Halifax Court explained
 
 
 71
 Agsalud thus illustrates that whether a State requires an existing plan to pay certain benefits, or whether it requires the establishment of a separate plan where none existed before, the problem is the same. Faced with the difficulty or impossibility of structuring administrative practices according to a set of uniform guidelines, an employer may decide to reduce benefits or simply not to pay them at all.
 
 
 72
 482 U.S. at 13, 107 S.Ct. at 2218 (footnote omitted) (emphasis added). Applying that principle to the Maine statute requiring payment of severance benefits, the Court stated:
 
 
 73
 By contrast, the Maine law does not put the employer to the choice of either: (1) integrating a state-mandated ongoing benefit plan with an existing plan or (2) establishing a separate plan to process and pay benefits under the plan required by the State. This is because there is no state-mandated benefit plan to administer.... The obligation imposed by the Maine statute thus differs radically in impact from a requirement than an employer pay ongoing benefits on a continuous basis.
 
 
 74
 482 U.S. at 14, 107 S.Ct. at 2218-19. Fort Halifax thus made clear that the fact that Mack chose to administer the benefits due under the buyout plan as part of an existing plan governed by ERISA, rather than to create a new administrative scheme, makes no difference in determining whether the buyout plan is an employee benefit plan under ERISA.
 
 
 75
 The majority concludes that Fort Halifax 's analysis of Agsalud is inapplicable because the statute in Agsalud conflicted with the employer's existing benefit plan, reasoning that there is no such conflict in this case because the benefits provided under the buyout plan will be administered as part of the existing plan. I am not persuaded. Although the district court found that benefits provided under the buyout plan were to be administered under the existing plan, that factual finding is not the same as saying that the provision of benefits under the buyout plan would be governed by the same legal requirements that apply to the existing plan under ERISA. To hold, as the majority does, that the benefits provided under the buyout plan are not part of a plan under ERISA is equivalent to holding that the employees' claims to those benefits are governed by some source of law other than ERISA.[1] Unless it can be said that the legal requirements are identical, then allowing two sources of law to govern one ERISA plan leads to a result expressly disapproved in Fort Halifax: "different components of [Mack's] single plan would be subject to different requirements."
 
 
 76
 I also remain unpersuaded by the majority's discussion of Fontenot v. NL Industries, 953 F.2d 960 (5th Cir.1992), and Pane v. RCA Corp., 868 F.2d 631 (3d Cir.1989). As the majority concedes, Fontenot simply does not discuss the "continuation" feature of the buyout plan. Majority at 1539. And while the majority distinguishes Pane on the ground that it "required the creation of an administrative apparatus" to evaluate each employee's claim, id., nowhere in the opinion does it say that a new administrative scheme would have to be created, or that such a scheme would conflict with an existing scheme. Rather, Pane merely states:
 
 
 77
 It [the severance plan] required an administrative scheme. Thus the [district c]ourt correctly held that the plan for awarding severance agreements is an ERISA employee benefit plan.
 
 
 78
 Id. at 635.
 
 
 79
 In sum, Fort Halifax instructs us to ask whether the provision of benefits requires ongoing administration. If so (and provided that other requirements not at issue here are satisfied), the policy behind ERISA preemption requires us to conclude that an employee benefit plan exists. Because the buyout plan clearly requires ongoing administration during the year benefits are continued, I must disagree with the majority's conclusion that it does not constitute an employee benefit plan under ERISA. I therefore cannot join in Part IV.
 
 II. EXHAUSTION
 
 80
 In Delgrosso v. Spang & Co., 769 F.2d 928 (3d Cir.1985), this court distinguished between
 
 
 81
 pension rights created by contract, which must be arbitrated, and claims based on purely statutory rights created by ERISA, which may be asserted in federal court directly.
 
 
 82
 Id. at 932. Expanding upon this distinction, we later stated:
 
 
 83
 Claims seeking to enforce the terms of a pension plan and to recover benefits provided by it are subject to a contractually required arbitration process. Purely statutory issues, however, are not within the competence of an arbitrator and fall under the court's jurisdiction.
 
 
 84
 Burke v. Latrobe Steel Co., 775 F.2d 88, 90 (3d Cir.1985).
 
 
 85
 Plaintiffs' alleged entitlement to ERISA benefits depends upon the buyout plan, and they conceded in their complaint that the plan is a collectively bargained agreement, see Majority at 1535. Therefore, under Delgrosso and Burke, plaintiffs were required to exhaust the grievance and arbitration procedures before asserting their ERISA claims in federal court. This they failed to do. Accordingly, I join in the majority's decision to affirm the district court's order directing a verdict in Mack's favor on the ERISA claims, and concur in the judgment.
 
 SUR PETITION FOR REHEARING
 
 86
 Before: SLOVITER, Chief Judge; BECKER, STAPLETON, MANSMANN, GREENBERG, SCIRICA, COWEN, NYGAARD, ALITO, ROTH, and GARTH*, Circuit Judges.
 
 
 87
 The petition for rehearing filed by appellants in No. 91-1791 having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.
 
 
 
 [1]
 It was apparently feared that such disclosure might discourage some employees from applying: employees with less seniority might conclude that they had no chance of being chosen for the buyout even if they were to apply, while senior employees, learning of the relatively high number of anticipated layoffs, might choose not to apply in hopes of obtaining more money from a more favorable plan
 
 
 [2]
 The employees speculate that the jury valued the contract at $75,000 and the benefits at $8,700. In addition, the employees speculate that the jury "charged" each employee approximately $1,500 for each month that they remained in Mack's employ, and subtracted $58,000 from the award of each employee who received that sum from Mack as severance pay in the later buyout plan
 
 
 [3]
 The employees asserted in their complaint that:
 
 
 [2]
 The action arises under the Employee Retirement Income Security Act [hereinafter "ERISA"], § 502(1)(B) and § 502(3), 29 U.S.C. § 1132(1)(B) and (3) to recover benefits due them under the terms of defendant's Severance Plan of December 18, 1989, and to enforce their rights under the Plan as announced on that date, as well as under § 301 of the Labor Management Relations Act of 1947 [hereinafter "LMRA"], as amended, 29 U.S.C. § 185, and the laws of the Commonwealth of Pennsylvania to redress rights held by each plaintiff under those laws
 JURISDICTION
 
 
 [3]
 Jurisdiction is conferred upon this Court by the provisions as contained in 28 U.S.C. §§ 1331 and 1343, as well as by ERISA, § 502(e), 29 U.S.C. § 1332(e) and LMRA, § 301, 29 U.S.C. § 185, all of which provide for original jurisdiction of plaintiffs' claims under the laws of the United States and over actions to recover damages and to secure equitable and other relief
 (A. 1568).
 
 
 [4]
 42 Pa.Cons.Stat.Ann. § 5103 provides:
 (a) General rule.--If an appeal or other matter is taken to or brought in a court or magisterial district of this Commonwealth which does not have jurisdiction of the appeal or other matter, the court or district justice shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper tribunal of this Commonwealth, where the appeal or other matter shall be treated as if originally filed in the transferee tribunal on the date when the appeal or other matter was first filed in a court or magisterial district of this Commonwealth. A matter which is within the exclusive jurisdiction of a court or district justice of this Commonwealth but which is commenced in any other tribunal of this Commonwealth shall be transferred by the other tribunal to the proper court or magisterial district of this Commonwealth where it shall be treated as if originally filed in the transferee court or magisterial district of this Commonwealth on the date when first filed in the other tribunal.
 (b) Federal Cases.--(1) Subsection (a) shall also apply to any matter transferred or remanded by any United States court for a district embracing any part of this commonwealth.... (2) Except as otherwise prescribed by general rules, or by order of the United States court, such transfer may be effected by filing a certified transcript of the final judgment of the United States court and the related pleadings in a court or magisterial district of this Commonwealth. The pleadings shall have the same effect as under the practice in the United States court, but the transferee court or district justice may require that they be amended to conform to the practice in this Commonwealth.
 
 
 [5]
 Section 301(a) of the LMRA provides:
 Suits for violation of contracts between an employer and a labor organization ... may be brought in any district court of the United States....
 29 U.S.C. § 185(a). Although section 301(a) refers only to suits between employers and unions, and does not explicitly mention suits between employers and employees, the Supreme Court has read this provision to create federal jurisdiction over all claims that are substantially dependent upon analysis of the terms of a collective bargaining agreement, regardless of whether the claim is brought by a union or directly by an employee. See, e.g., Allis-Chalmers v. Lueck, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); Griesmann v. Chemical Leaman Tank Lines, Inc., 776 F.2d 66 (3d Cir.1985) ("It is well recognized that individual employees can bring suit against their employers in federal court for breach of a contract between an employer and a union.").
 
 
 [6]
 Employees who dislike the terms of the agreements made by Mack with their union, including the decision not to disclose to the employees the numerical limit of participants in the buyout plan, must seek redress from the union, on the grounds that the union breached its duty of fair representation. See generally Air Line Pilots Ass'n v. O'Neill, --- U.S. ----, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991). We need not address possible claims against the union in the present case, however, because the employees have not appealed from the district court's dismissal of their claims against the union. (A. 42)
 
 
 [7]
 The employees also rely heavily on the Fifth Circuit's decision in Wells v. General Motors Corp., 881 F.2d 166 (5th Cir.1989), in support of their argument that federal labor law should not be applied to this controversy. Wells involved employees who alleged that GM had fraudulently induced them to accept a form of buyout plan by misrepresenting to them that they would be rehired if new jobs were created. After examining the particular circumstances of that case, the Wells court held that federal labor law did not preempt the employees' state-law claims, even though the employees had been represented by a union
 Wells is inapposite for several reasons. First, unlike the present case, Wells involved an alleged right to be rehired, which the Wells court held not to be a mandatory subject of bargaining between the employer and the union. Second, the employees in Wells invoked jurisdiction under 28 U.S.C. 1332, (diversity), rather than under the LMRA. Finally, the complaint in Wells did not allege any violations of the LMRA or of the collectively bargained labor agreement at issue in that case.
 
 
 [8]
 We note that, although the order from which appeal was taken was the district court's order of August 26, 1991, which denied the employees' motions for JNOV and Mack's motions for reconsideration, directed verdict, JNOV and a new trial, our disposition of this appeal, as set forth in text, disposes of the issues decided by the district court in its August 26, 1991 order
 
 
 [1]
 In this case, that source would be federal labor law because the buyout plan was a collectively bargained agreement. I note that if the employees had not been covered by a collective bargaining agreement, then to hold that the buyout plan is not a plan under ERISA would be to hold that state law governs their claims to benefits under the buyout plan, a result clearly also at odds with Fort Halifax
 
 
 *
 As to panel rehearing