**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1894
_____

MARK GIRARDOT; GERHARD R. WITTREICH; PETER BUTLER,
on behalf of themselves and all others similarly situated,
Appellants

v.

THE CHEMOURS COMPANY
_____

On Appeal from the United States District Court
for the District of Delaware
(D. Del. No. 1-16-cv-00263)
District Judge:  Honorable Sue L. Robinson

Submitted on February 8, 2018

Before:  CHAGARES, SCIRICA, and RENDELL, Circuit Judges.

(Filed: April 30, 2018)

_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

CHAGARES, Circuit Judge.

Mark Girardot, Gerhard Wittreich, and Peter Butler (the "Employees") brought claims under the Employee Retirement Income Security Act ("ERISA") against their former employer, the Chemours Company ("Chemours" or "the Company") related to an employee severance plan. Chemours moved to dismiss the claim pursuant to Fed. R. Civ. P. 12(b)(6), on the basis that the severance plan was not subject to ERISA. The United States District Court for the District of Delaware granted the motion, and the Employees now appeal the District Court's decision. For the reasons stated below, we will affirm.

I.

Reviewing the District Court's dismissal, we accept as true the factual allegations in the complaint. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). In October 2013, E. I. du Pont de Nemours ("DuPont") announced its intention to spin off parts of its Performance Chemicals business into a new company, Chemours. This process concluded in July 2015. Girardot, Wittreich, and Butler, who previously had been employed by DuPont, became employees of Chemours that month.

In September 2015, Chemours announced a voluntary reduction-in-force program called the Chemours Voluntary Separation Program ("VSP"). The Company informed employees that they could elect to be considered for the program between October 9 and 26 of that year. In a document made available to employees that October — the Chemours Voluntary Separation Program Frequently Asked Questions — the Company also stated that requests to participate in the VSP submitted outside the October window "w[ould] be considered on a strict, exception only basis." Appendix ("App.") 31. The

Company also issued a seven-page summary of the VSP ("the Summary").  The Summary provided that Chemours had sole authority and discretion to determine which employees would be eligible to participate in the VSP, and that it would approve all of the eligible employees no later than November 30, 2015.  Once approved, employees in the VSP were generally required to end their employment between December 1, 2015 and March 31, 2016; however, the VSP contemplated that the Company could select some employees to continue working part-time for up to six months after April 1, 2016.  Chemours had the discretion and authority to determine an employee's separation date within that range and whether an employee would be selected for a period of part-time employment.  Participants were required to complete "an appropriate knowledge transfer, as defined by Business Unit or Function Leadership" and "execute a Release Agreement which contains (i) a non-disparagement provision and (ii) a restrictive covenant prohibiting the employee from working for a competitor for a period of one (1) year unless Chemours, in its sole discretion, provides written approval otherwise."  Girardot Br. 7.  VSP participants were also ineligible for re-hire within twelve months, except that Chemours had the sole discretion to rehire them for "specialty consulting projects."  Id.

"Participants in the Chemours VSP were entitled to payment of a lump sum severance benefit of one week of base pay for each full year of service, with both a minimum benefit of two (2) weeks of base pay and a cap of twenty-six (26) weeks of base pay, i.e., a maximum benefit of six (6) months of base pay."  App. 32.  They were also entitled to a "lump sum payment equal to the costs of three (3) months of COBRA medical coverage" and to "the payment of a 'prorated bonus' for their year of separation

2

[] to be made 'in accordance with Chemours' procedures and based on Company performance.'" Id.

The Employees brought ERISA claims related to the VSP against Chemours. The Company moved to dismiss the claims pursuant to Fed. R. Civ. P. 12(b)(6), on grounds that the VSP was not a "plan" within the meaning of ERISA. The District Court granted the motion to dismiss. App. 15–25. The Employees then filed a timely appeal.

## II.

The District Court exercised jurisdiction over this matter pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we exercise plenary review over the District Court's dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Delaware Nation v. Pennsylvania, 446 F.3d 410, 415 (3d Cir. 2006).

## III.

Under ERISA, an "employee welfare benefit plan" is:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 302(c) of the Labor Management Relations Act, 1947 (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1). "[S]everance benefits do not implicate ERISA unless they require the establishment and maintenance of a separate and ongoing administrative scheme."

Angst v. Mack Trucks, Inc., 969 F.2d 1530, 1538 (3d Cir. 1992) (citing Fort Halifax

3

Packing Co. v. Coyne, 482 U.S. 1, 12 (1987)). The "crucial factor" in determining whether a program constitutes an ERISA plan is whether the employer expresses the intention "to provide benefits on a regular and long-term basis." Shaver v. Siemens Corp., 670 F.3d 462, 478 (3d Cir. 2012) (quoting Deibler v. United Food & Commercial Workers' Local Union 23, 973 F.2d 206, 209 (3d Cir. 1992)). Illustrating this concept, the Supreme Court in Fort Halifax noted:

> [The relevant benefits package] neither establishes, nor requires an employer to maintain, an employee benefit plan. The requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation. The employer assumes no responsibility to pay benefits on a regular basis, and thus faces no period demands on its assets that create a need for financial coordination and control. Rather, the employer's obligation is predicated on the occurrence of a single contingency that may never materialize. The employer may well never have to pay the severance benefits. To the extent that the obligation to do so arises, satisfaction of that duty involves only making a single set of payments to employees at the time the plant closes. To do little more than write a check hardly constitutes the operation of a benefit plan. Once this single event is over, the employer has no further responsibility. The theoretical possibility of a one-time obligation in the future simply creates no need for an ongoing administrative program for processing claims and paying benefits.

482 U.S. at 12. More recently, we posited that "simple or mechanical determinations do not necessarily require the establishment of [] an administrative scheme." Shaver, 670 F.3d at 477 (quoting Kulinski v. Medtronic Bio-Medicus, 21 F.3d 254, 257 (8th Cir. 1994)). ERISA plans "involve administrative activity potentially subject to employer abuse," reflecting the statute's purpose to protect the administrative integrity of benefit plans. Fort Halifax, 482 U.S. at 16.

4

Per Appellants' allegations, when creating the VSP, Chemours did not express an intention to provide regular and long-term benefits. On the contrary, the allegations suggest that Chemours merely entered into an obligation to provide lump-sum payments to a class of employees over a defined and relatively brief period. Determining the amount of these lump sum payments did not require a new administrative body or the exercise of discretion — rather, it involved the mechanical application of a simple formula based on time of employment with the Company. This aspect of the VSP fits squarely within the Fort Halifax analysis and does not indicate the need for an ongoing administrative scheme. Nor does the potential payment of prorated bonuses imply such a need. Chemours was under no obligation to pay bonuses, and because it would be paid — if at all — "per usual company practices" and on a one-time basis, there was no need to create a new administrative program to determine eligibility or amounts. See Angst, 969 F.2d at 1540–41 (distinguishing the creation of a new administrative scheme from the continuation of an existing procedure and noting that the latter did not subject a plan to ERISA).

We are likewise unconvinced that Chemours' individualized determinations of the employees' eligibility to participate in the VSP — which involved denying VSP applications of those employees that the Company needed to retain for business reasons — make the VSP an ERISA plan. While this process unquestionably involved an exercise of discretion and constituted more than a simple or mechanical decision, the selections took place in a period of less than two months. We cannot say that this involves long-term or ongoing administrative processes; eligibility, once determined, was

not conditioned on the occurrence of any future event that would require administrative consideration or adjudication. Moreover, we conclude that the selection process did not create a risk of employee abuse or mismanagement of the VSP.

In addition, none of the ancillary rights granted or obligations imposed upon VSP participants subject the plan to ERISA. The knowledge transfer requirement did not mandate indefinite responsibilities subject to oversight by an administrative scheme, but rather reflected a short-term obligation for outgoing employees to pass on institutional knowledge prior to separation. This time-limited obligation simply did not implicate ongoing administration, and seemingly required only the Company's passive and ministerial observation. The Employees have failed to allege adequately that this requirement necessitated Chemours to institute a new and ongoing administrative scheme. Similarly, the VSP's non-compete and non-disparagement provisions do not implicate such a scheme because they are untethered from any ongoing payment or adjudication of benefits. Finally, the possibility of rehiring does not change the analysis. The right of an VSP participant to reapply under the exception does not (1) require a new administrative process outside of Chemours' pre-existing hiring framework; (2) impact the participant's entitlement to a benefit, which would already have been paid;[1] or (3) create a risk of employee abuse.

---

[1] The complaint notes that an employee rehired within the relevant twelve-month period "may be required to pay back a portion of the VSP benefits depending on the timing." App. 31. Because the VSP does not require such an employee to return to work at the will of the Company, this provision cannot be interpreted as a contingent limitation on the receipt of the lump-sum benefits. Additionally, such a rehire would not necessitate the establishment of a new or ongoing administrative process.

6

For these reasons, we conclude that the VSP is generally akin to a <u>Fort Halifax</u> plan and does not involve a new or ongoing administrative scheme. Consequently, the VSP is not subject to ERISA and the District Court properly dismissed the complaint.

IV.

For the reasons stated above, we will affirm the Order of the District Court.