**Leonard S. JACOB, M.D., Ph.D., Plaintiff,**

**v.**

**SMITHKLINE BEECHAM [1], Defendant.**

**Civ. A. No. 92–0835.**

United States District Court, E.D. Pennsylvania.

June 17, 1993.

---

1. The caption of the complaint does not include a "corporate form" designation for defendant SmithKline. Further, in its pleadings before this Court, SmithKline refers to itself just as plaintiff has identified it in the caption of the complaint.

John W. Morris, Philadelphia, PA, for plaintiff.

Alan D. Berkowitz and Margaret A. McCausland, Dechert, Price & Rhoads, Philadelphia, PA, for defendant.

## MEMORANDUM

ROBRENO, District Judge.

Defendant removed this case to this Court from the Philadelphia Court of Common Pleas. In his state court complaint, plaintiff had averred, in part, that defendant, plaintiff's former employer, improperly terminated certain health benefits which defendant was contractually obligated to provide to plaintiff. Defendant contends that the Em-

ployee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., preempts plaintiff's contract claim and vests federal question jurisdiction on this Court. Plaintiff disagrees and wants the case remanded to state court.

Consideration of these issues compels the Court into the labyrinthian world of ERISA preemption jurisprudence. For the reasons set forth below, the Court finds that ERISA does not completely preempt plaintiff's claim, so that the motion to remand will be granted.

## I. BACKGROUND

Plaintiff Leonard S. Jacob, M.D., Ph.D. ("Jacob") was employed by defendant SmithKline Beecham ("SmithKline") from 1980 to 1988. In the fall of 1988, SmithKline, in connection with corporate restructuring, decided to eliminate Jacob's position. On October 3, 1988, SmithKline and Jacob entered into a four page written agreement ("the Agreement"), which set forth the terms of Jacob's severance package. The Agreement included a provision relating to the post-termination continuation of Jacob's health insurance.

On October 15, 1990, Jacob commenced an action against SmithKline in the Philadelphia Court of Common Pleas. Jacob's one count complaint alleged, in vague terms, that he either was or should have been offered a certain amount of shares in an employee incentive plan[2] but that SmithKline wrongfully denied him these shares or their value.

Immediately after his termination, Jacob had obtained health insurance through SmithKline. Jacob became reemployed by another company in August of 1990, and obtained health insurance through his new employer, as well. SmithKline became aware of Jacob's reemployment in January of 1991, while the state court action involving the "Share Value Plan" was still pending. Jacob alleges herein that SmithKline, upon learning of Jacob's reemployment, wrongfully caused the termination of Jacob's access to the health insurance benefits Jacob was ob-

---

**2.** The "Share Value Plan", the employee incentive plan at issue, was an employee incentive program whereby employees were granted hypothetical "shares" in the "division" of SmithKline in which the employees were employed. Under the Plan, the shares could ultimately be converted to cash value based on the performance of the division.

taining through SmithKline. SmithKline maintains that termination was permitted under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. §§ 1161–1168.

On January 10, 1992, Jacob filed a motion for leave to amend his complaint in state court. The proposed amended complaint attached to the motion sought leave to add a second count based on SmithKline's termination of Jacob's health benefits. On February 1, 1992, SmithKline removed the action to this Court.[3] In its removal petition, SmithKline contended that Count II of the proposed amended complaint was preempted by ERISA, thereby creating federal question jurisdiction.

This case was reassigned to my docket on September 11, 1992. On October 6, 1992, the Court held a status conference with counsel for the parties. At that time, both parties agreed that removal was timely and that Count II was preempted by ERISA. Since that time, Jacob changed his mind on the question of ERISA preemption. Jacob now seeks remand of this action, contending that this Court has no jurisdiction to hear this claim because Count II is not preempted by ERISA.[4]

**3.** SmithKline removed the case while the motion to amend was still pending in state court. Jacob's amended complaint was filed in this court by stipulation of the parties shortly after the case was removed. At a conference with counsel for the parties, the Court raised the question of whether removal was defective because it was premature. In their briefs, both parties take the position that SmithKline's removal was proper, arguing that the motion to amend put SmithKline on notice that Jacob's claim was one that "had become" removable for purposes of 28 U.S.C. 1446(b). Resolution of this issue is not required because the Court determines, as discussed *infra*, that no subject matter jurisdiction would exist in this action even if removal was not premature. Worth noting, however, is 28 U.S.C. § 1447(c), which states that objections to procedural defects in removal are waived if not raised within 30 days of removal. If premature removal is a procedural defect, which seems likely, the defect was waived because it was not raised by either party or the Court until more than thirty days after removal.

**4.** After removal was effectuated, SmithKline filed a motion for summary judgment in this Court.

## II. DISCUSSION

■ Under 28 U.S.C. § 1441, a defendant may remove any state court action over which the federal courts have "original jurisdiction." Generally, removal is proper only if plaintiff's claim establishes the basis for original jurisdiction. This long established rule, commonly referred to as the "well pleaded complaint" rule, precludes a defendant from removing a complaint grounded in state law if the only basis for federal jurisdiction is a *defense* arising out of federal law. *Taylor v. Anderson*, 234 U.S. 74, 75–6, 34 S.Ct. 724, 724, 58 L.Ed. 1218 (1914). The rule is grounded in federalism concerns, *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1395 (9th Cir.1988), recognizing that a plaintiff, as "master of the complaint," can choose to avoid a federal forum by "exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987).

■ The well pleaded complaint rule applies with full force even when the defense involved is one of federal preemption; i.e. *federal courts are without jurisdiction to adjudicate a state law claim even if the defendant argues that the claim is preempted by federal law. Franchise Tax Board v. Con-

In response to the summary judgment motion, Jacob argued, *inter alia*, that Count II was *not* an ERISA claim, but, rather, was a breach of contract claim based on the Agreement. On the same date that he submitted his response to the summary judgment motion, Jacob also filed a "Supplemental Memorandum Re Jurisdiction," in which Jacob asked that the case be remanded on the ground that Count II was not an ERISA claim. SmithKline responded to the supplemental memorandum, and the parties have since submitted several briefs and letters addressing the question of whether this Court has subject matter jurisdiction. The court will treat Jacob's supplemental memorandum as a motion to remand this action to state court.

Also pending is a counterclaim filed by SmithKline in this Court in which SmithKline claims that Jacob's act of bringing suit against SmithKline is violative of a release provision contained in the Agreement. The counterclaim states claims based on breach of contract and promissory estoppel. Jacob has filed a motion for summary judgment on the counterclaim. The Court's determination that it lacks subject matter jurisdiction obviates the need to address Jacob's motion.

*struction Laborers Vacation Trust,* 463 U.S. 1, 14, 103 S.Ct. 2841, 2848, 77 L.Ed.2d 420 (1983). Of course, the well pleaded complaint rule does not state that such a defense is barred. To the contrary, the well pleaded complaint rule allows for preemption determinations to be made by state courts, recognizing that state courts are perfectly competent to evaluate whether a state claim is federally preempted. *See Lister v. Stark,* 890 F.2d 941, 943, n. 1 (7th Cir.1989), *cert. denied,* 498 U.S. 1011, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990).

■ Application of the well pleaded complaint rule, however, is subject to the doctrine of "complete preemption." First approved by the United States Supreme Court in *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), the complete preemption rule allows a defendant to remove when plaintiff's ostensibly state law claim arises out of an area of law in which Congress has manifested an intent to "occupy the field." In such a situation, it is said that plaintiff's cause of action has been "completely preempted" because it is really a federal claim dressed in state law clothing. The state law claim, accordingly, must be "recharacterized" as federal. *Railway Labor Executives Association v. Pittsburgh & Lake Erie Railroad Co.,* 858 F.2d 936, 942 (3d Cir.1988). Allowing removal in this context is consistent with the policy underlying the well pleaded complaint rule since plaintiff's state law complaint is, in reality, federal in nature.[5]

Applying the well pleaded complaint rule and its complete preemption exception, there are two circumstances under which removal of Jacob's case is permissible. First, removal is proper if Jacob's claim "relies upon a federal law ground as a ground for recov-

ery." *Allstate Insurance Co. v. 65 Secur. Plan,* 879 F.2d 90, 93 (3d Cir.1989). If not, removal is appropriate only if the complaint "makes a claim that is 'completely preempted.'" *Id.; see also Lister,* 890 F.2d at 944.

Count II of Jacob's complaint stems from paragraph 6 of the agreement. In relevant part, paragraph 6 states as follows:

Health and dental insurance coverage will be continued for three months following termination (to July 30, 1989). SmithKline Beckman health and dental benefits may be continued beyond that point for a period of 18 months through individual arrangements with Blue Cross and Aetna. A special payment of $8,000 will be provided to you on April 30, 1989 to cover costs of health and dental insurance through January 31, 1991. This payment includes gross up for taxes.

In turn, Count II states in relevant part:

20. *As part of the separation agreement . . ., in Paragraph 6 thereof, it was further agreed that Plaintiff would be entitled to continued health and dental benefits through January 31, 1991.*

21. *The aforesaid agreement was specially negotiated and important to the Plaintiff* due to the fact that, as known to the Defendant, Plaintiff is the parent of two disabled children who require extensive medical care.

22. Following the institution of this lawsuit, Defendant contacted the carriers providing coverage to Plaintiff and his family and instructed them to retroactively cancel Plaintiff's coverage. Despite being informed of the financial and emotional distress caused to Plaintiff, Defendant refused to reinstate the coverage.

Amended Complaint (emphasis added).[6] Removal would clearly be proper if Jacob's

---

**5.** The parties' briefs do not specifically address the details of the complete preemption doctrine. Instead, they appear to assume that any claim preempted by ERISA is removable. This is not the case. *See Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 64 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987), distinguishing *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). In the parties' defense, one respected authority has alluded to

the complexity of complete preemption by calling it "a doctrine only a judge could love," further stating that it is "a darling of judges but a bane of practice." *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1075 (7th Cir.1992) (Easterbrook, J.).

**6.** Because the actual merits of Count II of the amended complaint are not at issue, the parties have not addressed them in detail. As best the Court can determine, the ultimate issue in Count II appears to be one of interpretation. Jacob

amended complaint stated, even implicitly, that SmithKline's act of terminating Jacob's health insurance was violative of ERISA or COBRA.[7] The amended complaint, however, makes no such reference, and instead appears predicated on SmithKline's alleged breach of the Agreement. Additionally, while Jacob may have been equivocal on the issue at one point during these proceedings, it is now clear that Jacob intends to proceed on a breach of contract theory. Since Jacob does not raise a federal cause of action, the question becomes whether Jacob's state law claim should be "recharacterized" as an ERISA claim under the complete preemption doctrine.

■ In the ERISA context, only claims that fall within the broad scope of ERISA's civil enforcement provision are completely preempted. *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Richmond v. American Systems Corporation*, 792 F.Supp. 449, 456 (E.D.Va.1992). *Cf. Goehl v. Mellon Bank*, 92–2547, 1993 U.S.Dist. LEXIS 5123 (E.D.Pa. April 21, 1993) (to find complete preemption, "the statute relied upon by the defendant as preemptive [must] contain[ ] civil enforcement provisions within the scope of which the plaintiff's state claim falls," quoting *Railway Labor, supra* (brackets in *Goehl* )). ERISA's relevant civil enforcement provision, 29 U.S.C. § 1132(a)(1)(B), provides:

> A civil action may be brought—
>> (1) by a participant or beneficiary—
>>> (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

It is apparent that this section requires both the existence of an ERISA "participant or beneficiary" and a claim under an ERISA "plan" before a civil enforcement action can lie under § 1132(a)(1)(B). Accordingly, for complete preemption to apply in this case SmithKline must show that Jacob's claim is one brought by a participant under an ERISA plan.

The parties have focused their attention on the "plan" aspect of § 1132(a)(1)(B). The seminal case on the question of what constitutes an ERISA plan is *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987). In *Fort Halifax*, the Supreme Court ruled that a state statute requiring employers to make a one-time, lump sum severance payment to terminated employees did not implicate an ERISA plan. Under the Court's reasoning, the existence of an ERISA plan was dependent on the presence of an administrative scheme that controlled the relevant benefits. The Court stated that "[t]he requirement of a one-time, lump-sum payment triggered by a single event requires no administrative scheme whatsoever to meet the employer's obligation.... To do little more than write a check hardly constitutes the operation of a benefit plan." *Fort Halifax*, 482 U.S. at 12, 107 S.Ct. at 2218.

■ The Third Circuit recently construed *Fort Halifax* in a factual setting similar to that of the case at hand. In *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530 (3d Cir.1992), employees claimed that their employer wrongfully denied them a promised severance package consisting of continuation of certain employee benefits for a period of one year, plus a one time, lump sum payment at the time of termination. The Third Circuit held that the action did not implicate ERISA, despite the fact that it involved a claim to continued benefits, because the employees' action was for benefits under an existing benefit plan. The claim, according to the Court, was not related to an ERISA plan under *Fort Halifax* since it did not involve

contends that Paragraph 6 of the Agreement constitutes a promise by SmithKline to provide health benefits to Jacob until the expiration of the eighteen month period set forth in that paragraph. SmithKline, on the other hand, argues that it fulfilled its obligation under the Agreement by paying Jacob the $8,000 amount, and that termination of benefits after Jacob's reemployment was permitted by COBRA. Of course,

the Court makes no comment on the validity of either parties' interpretation since the Court determines that it lacks subject matter jurisdiction over this action.

7. The parties are not diverse, so removal would be appropriate only on federal question grounds.

"the creation of a new administrative scheme, and [the claim] did not materially alter an existing administrative scheme." *Angst*, 969 F.2d at 1539, *citing Fort Halifax*. The *Angst* Court went on to say that "[w]hile ERISA would concededly preempt state legislation which purported to regulate existing employee benefits plans, ERISA does not apply to buyout plans, such as the buyout plan in the present case, which provide for the continuation of benefits to which the departing employees had already been entitled under an existing plan." *Id.* at 1540. Simply stated, the rule of *Angst* is that a terminated employee's claim to continuation of employment benefits does not implicate ERISA when the continued benefits are administered pursuant to an existing administrative scheme.

■ *Angst* applies with full force to the case at bar. Jacob claims that he was entitled to post termination health benefits under paragraph 6 of the Agreement. This claim, just like the claim at issue in *Angst*, involves no separate administration of a plan. The only difference between this case and *Angst* is that, here, Jacob claims that he tendered payment to SmithKline [8] in order to obtain continued benefits through SmithKline, while the employees in Angst claimed a right to have their benefits paid for by their employers. Jacob's "payment," however, is illusory. The parties acknowledge that Jacob received $8,000 from SmithKline pursuant to paragraph 6 of the Agreement "to cover costs of health and dental insurance through January 31, 1991." SmithKline acknowledges that Jacob used this money to repurchase health benefits through SmithKline. It is perhaps true that Jacob has not claimed that SmithKline was obligated to *directly* provide Jacob with continued health insurance in the sense that he does not claim that SmithKline was obligated to make periodic payment of premiums on Jacob's behalf. SmithKline might as well have made such payment, however, since all SmithKline did instead was to give Jacob the money so Jacob could pay the premium amount himself. In effect, SmithKline gave Jacob the $8,000 just so that Jacob could give it back.[9] For purposes of determining whether a benefit "continues" post termination, it cannot be seriously argued that there is a substantive difference between a situation, like the one herein, where the employer gives an employee funds to buy benefits under the employer's plan and a situation where, like that in *Angst*, the employer pays for those benefits itself.[10]

SmithKline, in fact, does not even argue that *Angst* is distinguishable on this basis. Instead, SmithKline asserts three other grounds for distinguishing *Angst*. First,

8. SmithKline admits that Jacob made monthly health insurance payments to the "SmithKline Beckman Employee Benefits Trust."

9. SmithKline's motivation for structuring the Agreement as it did seems suspect. In its memorandum in support of its summary judgment motion, SmithKline states that "SmithKline could not change the company's standard policy [of providing only three months of post termination health coverage] for a high-level executive like a vice president because it would be discriminatory." Memorandum in Support of Defendant SmithKline Beecham's Motion for Summary Judgment, at 10. SmithKline maintains that it structured the health benefits provision of the agreement the way it did as a result of this problem. *Id.* The Court states no opinion on whether SmithKline can successfully avoid a "discrimination" charge through the means chosen. The Court does rule that this method of payment has no effect on whether the benefit is "continuing" under *Angst*.

10. It is true that SmithKline at one point claims that Jacob was "free to purchase any health insurance he pleased" after receiving the $8,000 payment, thereby disputing the position that the $8,000 payment was given to Jacob for the sole purpose of purchasing post-termination insurance through SmithKline. *See* SmithKline's Supplemental Brief on Jurisdiction, at 2. This contention seems somewhat contrary to the assertions made by SmithKline earlier in this litigation, which indicate that the parties contemplated repurchase of SmithKline insurance. *See* SmithKline's Memorandum in Support of Summary Judgment, at 10 (the $8,000 payment was "a lump sum payment equal to the amount it would probably cost the plaintiff to pay for eighteen additional months of the generous coverage available to SmithKline employees."). The Court need not resolve this issue of interpretation, however. The fact is that Jacob *did* purchase continued health benefits through SmithKline, regardless of whether he also had the option to purchase other benefits. Jacob now claims a right to damages relating to wrongful termination of those continued SmithKline benefits. Such a claim is governed by *Angst*.

SmithKline argues that the employees in *Angst* claimed that they were not permitted to participate in a buy-out plan, while that is not the claim here. The Court does not see why this makes a difference, and SmithKline has proffered no reason why it should.

Second, SmithKline asserts that "[t]he parties here agree that plaintiff was entitled to make individual arrangements for health insurance with Blue Cross and Aetna; they disagree on how that insurance was to be administered after it was acquired." SmithKline's Supplemental Brief in Support of Jurisdiction ("Supplemental Brief") at 5–6. Again, however, SmithKline does not identify what aspect of plan "administration" is af- ·fected by Jacob's claim. In point of fact, Jacob's claim does relate to entitlement to benefits, in that the parties here are disputing whether Jacob is entitled to continued health benefits after Jacob's reemployment. By characterizing Jacob's claim for continued health benefits as a dispute over plan administration, SmithKline simply contorts Jacob's claim into something that it is not. As the Supreme Court has noted, a defendant cannot successfully oppose remand by "ignoring the set of facts ... presented by [plaintiffs], along with their legal characterization of those facts...." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 397, 107 S.Ct. 2425,

2432, 96 L.Ed.2d 318 (1987). Just like the plaintiffs' claim in *Angst*, Jacob's claim relates only to *entitlement* to post-termination benefits, not to how those benefits are to. be administered.

Finally, SmithKline maintains that ERISA allows for "termination of a former employee's COBRA coverage" when the employee becomes reinsured through a new employer. Supplemental Brief, at 7. SmithKline argues that allowing Jacob to recover health benefits through SmithKline after Jacob obtained alternative insurance through a new employer would result in a new administrative scheme because SmithKline would be required to "administer[] the plan differently for plaintiff than for other former employees...." *Id.* Again, SmithKline fails to explain *how* this would result in separate administration.[11] Certainly, simply *allowing* Jacob to remain insured under the SmithKline plan in circumstances where other former employees would not be so insured does not result in any additional administrative burden to SmithKline. As one court put it, "[a] decision to extend benefits is not the establishment of a plan or program." *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982) (quoted with approval by the Supreme Court in *Fort Halifax*, 482 U.S. at 12, n. 6, 107 S.Ct. at 2218, n. 6).[12]

---

**11.** The Third Circuit in *Angst* noted that the district court in that case made a factual determination that "[t]o the extent the buyout required ongoing administration of benefits, that administration occurred pursuant to a duly constituted benefits plan that already existed....." *Angst*, 969 F.2d at 1538. SmithKline's repeated failure to describe exactly *how* Jacob's claim involves separate administration compels this Court to make the same factual determination. SmithKline has not provided the Court with any information to indicate that it would somehow administer Jacob's repurchased health benefits differently from the health benefits of other SmithKline employees.

**12.** It could be argued that *Angst*'s holding was overruled by the United States Supreme Court's decision in *District of Columbia v. Greater Washington Board of Trade*, — U.S. —, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992), issued only five months after *Angst*. In *Greater Washington*, the Supreme Court found that ERISA preempted a state statute that required employers to provide continued health insurance benefits during periods when employees were eligible for workers' compensation. It is at least arguable that *Great-*

*er Washington* holds that ERISA preempts an employee's claim to "continuing" ERISA benefits, i.e. benefits to be provided after an otherwise disqualifying event, even though the benefits at issue do not involve a "new" administrative scheme. Such a holding would seem to be directly contrary to the holding in *Angst*. In fact, such a reading of *Greater Washington* appears to be consistent with the reasoning of Judge Becker in his dissent in *Angst*. The Court, however, declines to deem *Angst* overruled. First, *Greater Washington* did not involve payment to employees upon termination, making it at least arguable that *Angst* is more factually analogous to *Fort Halifax*, which did not find ERISA implicated, than *Greater Washington*, which did. Also, it is not clear that *Greater Washington* necessarily added anything to existing Supreme Court jurisprudence on the issue of what constitutes an ERISA plan, supporting the conclusion that the legal underpinnings of *Angst* survive *Greater Washington*. Finally, another court of this judicial district has relied upon *Angst* even after the decision in *Greater Washington*. See *Stokes v. Local 116 of the International Union of Electronic, Electrical, Salaried, Machine and Furniture*

## III. CONCLUSION

  The party seeking to remove an action from state court has the burden of establishing federal jurisdiction on a motion to remand. *Davis v. Baer*, 599 F.Supp. 776 (E.D.Pa.1984); Wright, Miller and Cooper, *Federal Practice and Procedure*, § 3799, p. 574. The Court concludes that SmithKline has not met its burden of establishing that this case is not controlled by *Angst*. Because the Court concludes that this action involves a terminated employee's claim to continuation of employment benefits that are not administered pursuant to a separate administrative scheme, *Angst* requires a finding that no ERISA plan is implicated. Since ERISA completely preempts only those claims that come within its civil enforcement provisions, and since those civil enforcement provisions require the presence of an ERISA plan, Jacob's claim is not completely preempted. The motion to remand will therefore be granted on the ground that this Court lacks subject matter jurisdiction.

An appropriate Order will be entered.

### ORDER

AND NOW, TO WIT, this 17th day of June, 1993, IT IS ORDERED that:

1. Defendant's motion for leave to file a supplemental brief (Docket No. 16) is hereby *GRANTED*, the Court having considered the supplemental brief in the course of ruling on plaintiff's motion to remand.

2. The pending motions for summary judgment (Docket Nos. 9 and 10) are hereby *DENIED*, without prejudice.

3. Plaintiff's motion for remand, plaintiff's "Supplemental Memorandum Re Jurisdiction" having been construed as such, is hereby *GRANTED*. The Clerk is directed to remand this case to the Philadelphia County Court of Common Pleas.

4. The Clerk shall mark this case "closed."

*Workers*, 92–3131, 1993 WL 23895, 1993 U.S.Dist. LEXIS 1009 (E.D.Pa. February 2, 1993). In sum, until the Third Circuit says otherwise, this Court will continue to adhere to *Angst* in the absence of a Supreme Court holding that does not unquestionably overrule it.