Eileen GUCKIN & Stephen Guckin, Plaintiffs,

v.

Deborah NAGLE, et al., Defendants.

No. CIV.A. 02–5648.

United States District Court, E.D. Pennsylvania.

April 28, 2003.

Alan Milstein, Sherman, Silverstein, Kohl, et al, Pennsauken, NJ, for Eileen Guckin, Stephen Guckin, Plaintiffs.

Paul A. Bechtel, Jr., Marshall Dennehey Warner, Coleman & Goggi, Timothy I. McCann, McCann & Geschke PC, Walter H. Swayze, III, Segal, McCambridge, Singer & Mahoney, Philadelphia, for Deborah Nagle, Individually and as an Employee of Tenet Healthcare Corporation and Graduate Hospital, Inc., Graduate Hospital, Inc., Tenet Healthcare Corporation, Curon Medical, Inc., Defendants.

## MEMORANDUM

ROBRENO, District Judge.

Eileen Guckin ("Guckin") and her husband Stephen Guckin brought this personal injury action against defendants Dr. Deborah Nagle, Tenet Healthcare Corporation, Graduate Hospital; Curon Medical, Inc. ("Curon"), and several John Does in state court claiming that she was injured in the course of her participation in the clinical trial of an investigational medical device designed to remedy fecal incontinence. Curon removed the case to this court. Curon asserts that the court has federal question jurisdiction over this matter because (1) Guckin's state law negligence and fraudulent misrepresentation claims inherently raise substantial questions of federal law, (2) the investigatory device exemption to the federal Food, Drug and Cosmetic Act ("FDCA"), under

whose auspices Guckin's clinical trial was conducted, creates an area of complete federal preemption such that Guckin's claims are properly federal, not state, in nature, and (3) Curon was allegedly a federal officer empowered to remove the instant case to federal court. Before the court is Guckin's motion to remand.

For the reasons that follow, the court concludes that (1) no substantial federal question is presented in the case because the FDCA, as amended by the Medical Device Amendments ("MDA"), does not provide for a private right of action, (2) the FDCA and MDA do not create an area of complete preemption, such that the state court is barred from hearing Guckin's claims, because the FDCA and MDA do not provide civil remedies for claims that fall within their scope, and there is no clear manifestation of congressional intent to permit removal on the basis that state courts will be forced to interpret federal law, and (3) the defendants in this case are all private parties who are not federal officers empowered to remove the instant case to federal court. Therefore, the court will remand the case to state court.

## I. FACTS

The Food, Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq.*, as amended by the Medical Device Amendments of 1976, provides detailed requirements governing the premarket approval process for medical devices for use in humans. *See* 21 U.S.C. § 360c. Under the FDCA, states are barred from establishing or continuing in effect "with respect to a device intended for human use any requirement ... which is different from, or in addition to, any requirement applicable under this chapter ... and which relates to the safety or effectiveness of the device ...." 21 U.S.C. § 360k.

Of all types of medical devices, the FDA reserves the most rigorous premarket approval review for those devices that are identified as "Class III." The reason is that these devices "presen[t] a potential unreasonable risk of illness or injury." 21 U.S.C. § 360c(a)(1)(C)(ii)(II). The "investigational device exemption" ("IDE") to the FDCA provides, however, that new Class III devices may proceed to clinical trials, if the FDA preliminarily examines the technical and scientific evidence, and concludes that the device is safe for further testing. *See* 21 U.S.C. § 360j(g); 21 C.F.R. § 812. A detailed regulatory scheme specifies how clinical investigations involving new devices are to be monitored, *see* 21 C.F.R. § 812.2 (summarizing the lengthy IDE requirements set forth in the body of the regulation). 45 C.F.R. § 46 sets forth the protections that are to apply to human subjects engaged in clinical trials.

In the Fall of 2001, Eileen Guckin participated in the clinical trial of the Secca System, a Class III investigational medical device that was manufactured by Curon Medical, Inc., and designed to remedy fecal incontinence. The clinical trial of the Secca System was conducted by principal investigator Deborah Nagle, M.D., a colorectal surgeon employed by Graduate Hospital and Tenet Healthcare, Inc. During the course of this trial, and following implantation of the Secca System, the device allegedly malfunctioned, causing Guckin serious and permanent injuries.

Guckin and her husband Stephen brought the instant action in the Philadelphia County Court of Common Pleas against Dr. Nagle, Graduate Hospital, Tenet Healthcare, Inc., and Curon Medical, Inc. for negligence, assault, battery, lack of informed consent, intentional infliction of emotional distress, negligent infliction of emotional distress, common law fraud, intentional misrepresentation, strict liability in tort, and loss of consortium in

connection with Mrs. Guckin's injuries. The Guckins also sued twelve John Does, thus far unidentified members of the Institutional Review Board ("IRB") of Graduate Hospital, which ostensibly approved the Secca System clinical trial, for negligence. Guckin's complaint, on its face, does not purport to rely on any federal law. The parties are non-diverse.

Guckin has moved to remand, arguing that the court lacks subject matter jurisdiction. In opposition to remand, Curon argues that the court has federal question jurisdiction over this matter because (1) Guckin's state law negligence and fraudulent misrepresentation claims inherently raise substantial questions of federal law, (2) the investigatory device exemption to the FDCA under whose auspices Guckin's clinical trial was conducted, constitutes an area of complete federal preemption such that Guckin's claims are properly federal, and not state, in nature, and (3) because Curon is a federal officer empowered to remove the instant case to federal court.

## II. DISCUSSION

### A. Standard of Review

A district court considering a motion to remand "must focus on the plaintiff's complaint at the time the petition for removal was filed ... [and] must assume as true all factual allegations of the complaint." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir.1987), *cert. dismissed sub nom. American Standard v. Steel Valley Auth.*, 484 U.S. 1021, 108 S.Ct. 739, 98 L.Ed.2d 756 (1988). The "party who urges jurisdiction on a federal court bears the burden of proving that jurisdiction exists ...." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990); *see also Steel Valley Auth.*, 809 F.2d at 1010 ("It remains the defendant's burden to show the existence and continuance of federal jurisdiction."). Because the removal of an action from the state court to a federal forum implicates comity and federalism, "removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Steel Valley Auth.*, 809 F.2d at 1010 (citing *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir.1985)); *accord Brown v. Francis*, 75 F.3d 860, 865 (3d Cir.1996); *Boyer*, 913 F.2d at 111.

### B. Federal Question Jurisdiction

" '[F]ederal question' cases ... [are] those cases 'arising under the Constitution, laws, or treaties of the United States.' " *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (quoting 28 U.S.C. § 1331). As a general rule, "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal question jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). In practical effect, the well pleaded complaint rule allows the plaintiff, as "master of the complaint," to choose to avoid a federal forum by "exclusive reliance on state law." *Id.*

Given that the well pleaded complaint rule allows removal "only when the *plaintiff's* statement of his own cause of action shows that it is based upon [federal] laws or [the] Constitution," actions are not removable based on the availability of a federal defense to the state law grounded complaint. *Bracken v. Matgouranis*, 296 F.3d 160, 163 (3d Cir.2002) (quoting *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908)) (emphasis supplied). The rule "applies with full force even when the defense involved is one of federal preemption." *Jacob v. SmithKline Beecham*, 824 F.Supp. 552, 554 (E.D.Pa.1993) (Robreno,

J.). The rule is based on a recognition that "[s]tate courts are competent to determine whether state law has been preempted by federal law and they must be permitted to perform that function in cases brought before them, absent a Congressional intent to the contrary." *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R. Co.*, 858 F.2d 936, 942 (3d Cir.1988).

At the same time, however, "it is an independent corollary to the well-pleaded complaint rule that a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 22, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983). This corollary, known as the "artful pleading doctrine," allows federal courts to exercise jurisdiction, even when a federal claim does not appear on the face of the plaintiff's complaint, if (1) federal law has completely preempted the state law that serves as the basis for the plaintiff's complaint, or (2) a federal question, not pleaded in the plaintiff's complaint, is nonetheless both intrinsic and central to the plaintiff's cause of action. 14B Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure § 3722 (3d ed.1999).

Curon first alleges that both aspects of the artful pleading doctrine are implicated in this case. According to Curon, to the extent that Guckin's complaint alleges negligence and fraudulent misrepresentations on Curon's part,[1] it requires the resolution of a substantial federal question, namely whether Curon adhered to the standards of conduct set forth under 45 U.S.C. § 46 and other federal regulations that governed the conduct of the clinical trial during which Guckin was injured. In the alternative, Curon argues that the investigatory device exemption to the FDCA completely preempts state law, such that federal jurisdiction is proper.

As a threshold matter, the court notes that it is unclear within the Third Circuit whether the defendant's suggested analytical construct, which treats the existence of a substantial federal question as a basis for federal question jurisdiction separate and distinct from that afforded by complete preemption, has continued viability. This is so because, as another district court has noted, the test for a "substantial federal question" as announced by the Supreme Court appears to involve the same factors that the Third Circuit has instructed courts to consider when determining whether a state cause of action has been

---

1. Curon's argument in favor of federal jurisdiction is based on three paragraphs of Guckin's complaint. First, in paragraph 35, which comprises part of Guckin's negligence count, Guckin alleges that

> Defendants ... were negligent in that they failed to treat Ms. Guckin in accordance with the standards governing the medical and research professions, failed to conduct the clinical trial in a careful and professional manner, failed to treat Ms. Guckin properly once she suffered injury in the experiment, failed to abide by 45 C.F.R. § 46 and other regulations and standards governing the conduct of clinical trials, and otherwise acted negligently as a matter of law.

Complaint ¶ 35. Second, in paragraph 50, Guckin alleges that defendants are liable for intentional misrepresentation and common law fraud for intentionally misrepresenting (a) the nature and history of the clinical trial, and (b) facts relating to the adverse event which occurred in the course of the clinical trial. Complaint ¶ 50. Third, in paragraph 61, Guckin alleges that the Secca System was defective and unreasonably dangerous when sold based generally on inadequate labeling, misrepresentations in the device's advertising and promotional materials, failure to provide sufficient facts to allow physicians and consumers to make informed decisions as to the use of the Secca System, failure to provide necessary information to the FDA, and overpromotion. *See* Complaint ¶ 61.

"completely preempted" by federal law, and because "[b]oth tests are aimed at determining whether Congress has intended to create a federal forum for the issues involved in the state law cause of action." *Conway v. PECO Energy Corp.*, No. CIV. A. 96–7284, 1997 WL 34672, at *4 n. 2 (E.D.Pa. Jan. 28, 1997) (Yohn, J.) (concluding that "[i]t seems quite probable ... that the complete preemption doctrine swallows any remnants of the 'substantial question of federal law' ....").[2] However, for purposes of this case, given that the defendant has argued the existence of federal question jurisdiction on both grounds, the court will treat substantial federal question and complete preemption as separate grounds potentially conferring jurisdiction on the federal courts. For the reasons that follow, the court concludes that defendant is not entitled to remove on either ground.

### 1. *Substantial federal question*

The Supreme Court has stated broadly that federal jurisdiction is appropriate whenever "it appears that some substantial, disputed question of federal law is a necessary element of one of the [plaintiff's] well-pleaded state claims." *Franchise Tax Bd.*, 463 U.S. at 13, 103 S.Ct. 2841. The apparent sweep of this statement, however, was later tempered by the Court's observation that "the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharmaceuti-*

cals, *Inc. v. Thompson*, 478 U.S. 804, 813, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).

In *Merrell Dow* the plaintiffs were all parents of children born with multiple deformities that allegedly resulted from the mother's use of the drug Bendectin during pregnancy, and brought state law claims of negligence, breach of warranty, strict liability, fraud and gross negligence in state court against Merrell Dow Pharmaceuticals, the company that had developed and marketed the drug. *Id.* at 805, 106 S.Ct. 3229. The plaintiffs' complaint alleged in part that the companies had misbranded Bendectin in violation of the FDCA, that the violation of the FDCA in the promotion of Bendectin constituted a rebuttable presumption of negligence, and that the violations of the federal statutes directly and proximately caused the plaintiffs' harm. *Id.* at 805–06, 106 S.Ct. 3229. Merrell Dow removed the action to federal court on the theory that the plaintiffs' complaint was therefore founded, in part, on an alleged claim arising under the laws of the United States. *Id.* at 806, 106 S.Ct. 3229. The question presented there, therefore, much as in this case, was "whether the incorporation of a federal standard in a state-law private action, when Congress has intended that there not be a federal private action for violations of that federal standard, makes the action one 'arising under the Constitution, laws or treaties of the United States.'" *Id.* at 805, 106 S.Ct. 3229 (quoting 28 U.S.C. § 1331).

---

**2.** In *Goepel v. Nat'l Postal Mail Handlers Union*, 36 F.3d 306 (3d Cir.1994), a case that dealt exclusively with a claim that federal jurisdiction was proper on the basis of complete preemption, the Third Circuit described the two-part test that it was announcing for complete preemption as "the only basis for recharacterizing a state law claim as a federal claim removable to a district court ...." *Id.* at 312. The existence of a substantial federal question was not an issue in *Goepel,* however, and the Third Circuit therefore had no occa-

sion to discuss the Supreme Court's decision in *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986), which announced a test for determining the existence of a *substantial federal question* that conferred jurisdiction on the federal courts. In this context, the court hesitates to conclude that *Goepel's* silence with respect to *Merrell Dow* constituted a complete eradication of substantial federal question as a basis for federal jurisdiction.

The Supreme Court answered this question in the negative, stating that "the congressional determination that there should be no federal remedy for a violation of [a] federal statute is tantamount to a congressional conclusion that the presence of a claimed violation of the statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." *Id.* at 814, 106 S.Ct. 3229. Therefore, under *Merrell Dow*, "a private federal remedy for violating a federal statute is a *prerequisite* for finding federal question jurisdiction [when a party has alleged that jurisdiction is proper due to the existence of a substantial federal question]." *Smith v. Indus. Valley Title Ins. Co.*, 957 F.2d 90, 93 (3d Cir.1992) (emphasis supplied).

 Applying the teachings of *Merrell Dow* to this case, the court concludes that Curon has neither argued nor shown that the FDCA, or any relevant, related regulations provide for a private, federal cause of action. *See In re Orthopedic Bone Screw Prods. Liability Litig.*, 193 F.3d 781, 788 (3d Cir.1999) (citing 21 U.S.C. § 337(a) for the proposition that the enforcement of the FDCA is limited to suits brought by the United States); *Strong v. Telectronics Pacing Sys., Inc.*, 78 F.3d 256, 261 (6th Cir.1996) (noting that the MDA provides only federal administrative remedies). Thus, under *Merrell Dow*, because neither the FDCA nor the MDA provide for a private right of action, there is no substantial federal question that confers jurisdiction on this court.[3] The fact that the state court may need to inquire into federal statutes or apply federal law, in the absence of a private cause of action under the FDCA and MDA, renders any federal question or issue that may exist insufficiently substantial to confer federal question jurisdiction in this case.[4]

3. Curon seeks to avoid this reality by arguing that the need for extensive interpretation of federal law will be necessary in the instant action. To that end, Curon points to the need under the complaint to examine the marketing, testing and promotion standards of 45 C.F.R. § 46, as well as the terms of the authority granted by the FDA through the investigational device exemption. This argument is unavailing. As the Supreme Court made clear in *Merrell Dow*, the existence of federal issues important to the resolution of a given case is a necessary, but not sufficient, precondition to removal on the basis of federal question jurisdiction. Rather, *Merrell Dow* directs courts to use the presence or absence of federal private remedies, for example, as an indicator of the substantiality of the federal question in situations where the existence of federal jurisdiction is uncertain. *See Merrell Dow*, 478 U.S. at 814, 106 S.Ct. 3229.

4. The Supreme Court also emphasized in *Merrell Dow* that, "despite the usual reliability of the Holmes [private right of action] test," *Merrell Dow*, 478 U.S. at 814 n. 12, 106 S.Ct. 3229, the nature of the federal interest at stake in a given case also bears on the inquiry into the existence of federal question jurisdiction. *See id.* ("In *Smith*, ... the issue was the constitutionality of an important federal statute ... In *Moore*, ... the violation of the federal standard as an element of state tort recovery did not fundamentally change the state tort nature of the action."). Considering the federal interest here, however, would not change the result in this case. The court notes that during the hearing on Guckin's motion to remand, Curon asserted that, in this case, state courts should not decide issues implicating the MDA because "the defendants have a right to consistent interpretation of the statutes at issue ...." Transcript (11/5/02) at 10. The Supreme Court was confronted with a similar argument when it considered in *Merrell Dow* the nature of the federal interest at stake with respect to the FDCA in general. The Court noted that the "concern with uniformity of interpretation ... is considerably mitigated by the fact that, even if there is no original district court jurisdiction for these kinds of [state law] actions, [the Supreme Court] retains power to review the decision of a federal issue in a state cause of action." *Merrell Dow*, 478 U.S. at 816, 106 S.Ct. 3229. The same is true in the instant case.

## 2. Preemption

The jurisdictional doctrine of complete preemption encompasses those rare situations in which "the pre-emptive force of a [federal] statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987) (quoting *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987)). This is so because "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.; accord Goepel v. Nat'l. Postal Mail Handlers Union*, 36 F.3d 306, 310 & n. 5 (3d Cir.1994) (explaining that the artful pleading doctrine encompasses situations of complete preemption, and that "a state cause of action is 'really' a federal cause of action which may be removed to federal court if the 'federal cause of action completely preempts ... [the] state cause of action'").[5]

For complete preemption to apply, two preconditions must be met. First, the statute relied upon by the defendant as preemptive must contain "civil enforcement provisions within the scope of which the plaintiff's state claim falls." *Goepel*, 36 F.3d at 311. Obviously, "[i]f the federal statute creates no federal cause of action vindicating the same interest the plaintiff's state cause of action seeks to vindicate, ... there is no claim arising under federal law to be removed and litigated in federal court." *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R. Co.*, 858 F.2d 936, 942 (3d Cir. 1988)(also noting that complete preemption "has never been applied in a situation where there was no federal cause of action *comparable* to the state cause of action asserted by the plaintiff"). Second, there must be "a clear indication of a Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." *Goepel*, 36 F.3d at 311 (citing *Metropolitan Life Ins. Co.*, 481 U.S. at 64–66, 107 S.Ct. 1542); *accord Railway Labor Executives*, 858 F.2d at 942 ("The Supreme Court has indicated that [the complete preemption doctrine] should not be applied unless there is affirmative evidence of a Congressional intent to permit removal ....").

■ Curon argues that federal question jurisdiction exists in this case on the theory that "where an IDE and its associated protocol is involved, federal law preempts state law." Def. Curon Medical, Inc.'s Response to Pl.'s Mot. to Remand at 14. In support of this proposition, Curon points to the MDA's preemption of state remedies provision, which bars states from effecting, with respect to a medical device intended for human use, "any [substantive law] requirement ... which is different from, or in addition to, any requirement applicable [under the FDCA] to the device, and ... which relates to the safety or effectiveness of the device ...." 21 U.S.C. § 360k(a). Curon then cites and explores at great length the case law developed in the summary judgment context and addressing whether federal law, as embodied in the FDCA, MDA and IDE, "preempts" the operation of state law, i.e., bars plaintiffs from proceeding under state law theories of recovery.[6] Essentially, Curon is argu-

---

**5.** The Supreme Court has thus far recognized complete preemption in only two contexts, namely in cases involving § 301 of the Labor Management Relations Act and ERISA. *Metropolitan Life Ins. Co.*, 481 U.S. at 63–64, 66–67, 107 S.Ct. 1542.

**6.** *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 343–44, 121 S.Ct. 1012, 148 L.Ed.2d 854 (2001) (finding state tort law fraud on the FDA claims preempted by the FDCA); *Medtronic v. Lohr*, 518 U.S. 470, 474, 501, 116 S.Ct. 2240, 135 L.Ed.2d

ing in favor of a determination by this court that the operation of federal law with respect to the IDE preempts, i.e., precludes, plaintiff from recovering under her state law theories of negligence and fraudulent misrepresentation. If this is so, Curon contends, removal is proper on the basis of federal question jurisdiction established through "complete preemption." For the reasons that follow, the court does not agree.

First, Curon's argument fundamentally misapprehends the difference between the jurisdictional doctrine of "complete preemption," which determines whether a federal, as opposed to a state, court can hear a particular action, and the doctrine of "ordinary preemption," which "governs what substantive law-federal or state-ought to control a claim styled under state law." *Krashna v. Oliver Realty, Inc.*, 895 F.2d 111, 114 n. 3 (3d Cir.1990) (noting that "[i]f Congress intended federal law to preempt the state law claim, then the court (federal or state) must dismiss it [at the summary judgment stage] under the principles of ordinary preemption."). In other words, complete preemption addresses the forum, i.e., federal or state, where the claim must be heard; "ordinary preemption" addresses the substantive rule of decision, i.e., federal or state, which the court must apply. For these reasons, Curon's arguments in favor of the application of substantive federal law are inapposite to the question of whether the court has federal question jurisdiction in the instant case.[7]

Second, under the framework established by the Third Circuit for analyzing whether federal law completely preempts state court jurisdiction in particular cases, Curon's contention has no merit. *See Goepel v. Nat'l Postal Mail Handlers Union*, 36 F.3d 306 (3d Cir.1994). *Goepel* involved a claim by a plaintiff against her health care plan, which was established under the Federal Employees Health Benefit Act ("FEHBA") for violations of the New Jersey Law Against Discrimination, breach of contract, unconscionability, and unfair claim settlement practices. *Id.* at 307–08. The health care plan's representative removed the case to federal court. *Id.* at 308. In opposition to remand, the removing party argued that FEHBA created an area of complete preemption, and that, as such, plaintiff's state law claims were, in fact, inherently federal in nature. *Id.* at 308–09. The Third Circuit disagreed. *Id.* at 313. Comparing the characteristics of FEHBA to those of ERISA, one area of recognized complete preemption, the Third Circuit determined that complete preemption exists only when (1) the federal statute that ostensibly serves as the basis for removal contains civil enforcement provisions within the scope of which the plaintiff's claim falls, and (2) there is a clear indication of Congressional intent to permit removal. *Id.* at 311.

*Goepel* is not helpful to defendants. First, the FDCA does not provide for civil enforcement remedies within the scope of which Guckin's claim for damages based on negligence and misrepresentation would

700 (1996) (finding that § 510(k) of the MDA did not preempt state common law claim of negligence against the manufacturer of an allegedly defective medical device); *Kemp v. Medtronic, Inc.*, 231 F.3d 216 (6th Cir.2000) (exploring preemption in the context of a Class III medical device); *Berish v. Richards Med. Co.*, 937 F.Supp. 181, 185 (N.D.N.Y. 1996) (finding that plaintiff's state common law claims sounding in negligence and strict

products liability with respect to an IDE are preempted).

7. One respected authority has alluded to the complexity of the complete preemption doctrine by calling it "a doctrine only a judge could love," further stating that it is "a darling of judges but a bane of practice." *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1075 (7th Cir.1992) (Easterbrook, J.).

fall. The FDCA states that, with one exception not implicated by the facts of this case, "all ... proceedings for the enforcement, or to restrain violations of this chapter [known as the Food, Drug & Cosmetic Act] shall be by and in the name of the United States." 21 U.S.C. § 337(a); *see also In re Orthopedic Bone Screw Prods. Liability Litig.*, 193 F.3d 781, 788 (3d Cir. 1999) ("It is well settled ... that the FDCA creates no private right of action.").

The second prong of *Goepel* is not met, either. While it is true that the FDCA provides some administrative remedies [8] for an aggrieved user of an FDA-approved product to bring an action against the *FDA* for enforcement of the FDCA, these procedures are not aimed at third parties, such as the defendants here, and are thus "insufficient to evince the clear manifestation of congressional intent necessary to create removal jurisdiction." *Strong v. Telectronics Pacing Sys., Inc.*, 78 F.3d 256, 261 (6th Cir.1996).[9] Accordingly, the court concludes that the doctrine of complete preemption does not apply, and that federal question jurisdiction does not provide a basis for removal.

## C. Federal Officer Removal

28 U.S.C. § 1442 provides that "any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office" may remove the action to federal court. 28 U.S.C. § 1442(a)(1). Conceding that its argument is "somewhat unusual," defendant Curon seeks to salvage its removal attempt on the theory that, as the manufacturer of the Secca System, it qualifies for removal under a broad reading of the federal officer removal statute, because it acted at all times under the direct and participatory control of the FDA, and as such was subject to exceedingly complex regulations, guidelines and evaluation schemes. Therefore, Curon asserts that it can demonstrate a "colorable federal defense of preemption," and is empowered to remove this case The court does not agree.

---

**8.** Given that only the government may enforce the FDCA, a private citizen seeking to bring about changes in the manner in which the FDCA is administered may do so either by filing a citizen petition with the FDA, 21 C.F.R. § 10.30, or through a suit brought against the FDA under the Administrative Procedures Act. 5 U.S.C. § 702, 706. There is no provision in the FDCA, the MDA, or the APA that allows private citizens to sue private providers of FDA-approved products directly in a non-administrative forum.

**9.** *Strong v. Telectronics, Inc.*, 78 F.3d 256 (6th Cir.1996) involved state law negligence claims by a plaintiff who alleged that he was injured by a malfunctioning pacemaker. *Id.* at 258. The defendants in *Strong* removed to federal court on the theory that there was "federal question jurisdiction under the complete preemption exception to the well-pleaded complaint rule because the MDA both preempts state law and provides exclusive federal remedies for violations of the Act." *Id.* at 259. Approaching the question in a manner identical to that endorsed by the *Goepel* court, the Sixth Circuit disagreed. *See id.* at 259–61.

First, noting that "complete preemption is expressed through the creation of a parallel federal cause of action," *id.* at 260, the Sixth Circuit noted that " § 360k(a) expressly preempts certain state requirements, but does not create a parallel federal cause of action [and a]ccordingly ... cannot convert a state law cause of action into a federal question under the well-pleaded complaint rule ...." *Id.* at 260–61. Second, the Sixth Circuit concluded that the federal administrative remedies available under the MDA did not evidence a "clear manifestation of congressional intent necessary to create removal jurisdiction." *Id.* at 261. Therefore, there was no federal question jurisdiction. *Id.* The court finds the Sixth Circuit's reasoning equally persuasive in the instant action.

Within the Third Circuit, a defendant asserting that it is qualified to exercise federal officer removal power under 28 U.S.C. § 1442, must establish that "(1) it is a 'person' within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct 'acting under' a federal officer; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office." *Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir.1998). Noting that Curon has alleged a plausible causal connection between Guckin's claims and its role in manufacturing the Secca System, the court will examine seriatim the proof on each of the first three prongs of *Feidt*.

With respect to the first prong of the *Feidt* inquiry,[10] Guckin asserts that the court should reject out of hand Curon's attempt to claim federal officer status because the Third Circuit has not specifically decided that corporations are "persons" for the purposes of federal officer removal. Although the Third Circuit indeed has taken no position on the issue, two lower courts within the Circuit have answered this question in the affirmative. In *Good v. Armstrong World Indus., Inc.*, 914 F.Supp. 1125 (E.D.Pa.1996) (Reed, J.), the district court considered whether a corporation that had designed and manufactured turbines for the Navy was a "person" for purposes of federal officer removal under 28 U.S.C. § 1442. Acknowledging that "federal district courts are divided on the question," *id.* at 1127–28, the court took note of 1 U.S.C. § 1, which provides guidelines for construing Acts of Congress, and which states in relevant part that "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise ... the words 'person' and 'whoever' include corporations ... as well as individuals." 1 U.S.C. § 1. Therefore, the court chose to agree with "those opinions taking a broad approach when defining 'person,' and thereby includ[ing] corporations within the definition." *Id.* at 1128; *see also Megill v. Worthington Pump, Inc.*, No. CIV. A. 98–76–SLR, 1999 WL 191565, at *3 (D.Del. Mar. 26, 1999) (Robinson, J.) (citing *Good* and concluding that "as a corporation, defendant ... is a 'person' within the meaning of the federal officer removal statute"). For the same reasons, the court concludes that Curon is a "person" within the meaning of 28 U.S.C. § 1442.

With respect to the second prong of *Feidt*, Curon argues that the high level of involvement of the FDA in the premarket approval process for devices for which an IDE has been granted placed Curon under FDA control for the purposes of the federal officer removal statute. To this end, Curon points out that the testing and investigation of a medical device for which an IDE is granted is conducted under the supervision of an IRB, which operates under the direct control of the FDA and is required by the FDA to determine whether, for example, manufacturing information conforms with the FDCA, 21 C.F.R. § 812.20(b)(3), whether the product labeling is complete, 21 C.F.R. § 812.5, and whether the consent materials comply with the provisions of 21 C.F.R. § 812.25(g) and 21 C.F.R. § 50.20. Curon also argues that because courts have allowed removal under 28 U.S.C. § 1442 by government contractors, managed-care companies, national banks, and federal licensees, removal in

10. Curon did not tailor its arguments on federal officer removal to fit exactly within the parameters of the inquiry established in *Feidt*. Rather, Curon asserted that it need only (1) establish that it was acting under the direct and detailed control of a federal official regarding the activities complained of, and (2) demonstrate a colorable federal defense.

this situations is also proper. For the reasons that follow, the court does not agree.

The court finds instructive and analogous two recent cases in which the district courts rejected claims by pharmaceutical companies that heavy regulation by the FDA converted them into federal officers for purposes of 28 U.S.C. § 1442. *See Jamison v. Purdue Pharma Co.*, 251 F.Supp.2d 1315 (S.D.Miss.2003); *Little v. Purdue Pharma, L.P.*, 227 F.Supp.2d 838 (S.D.Ohio 2002). As one of these courts explained:

> Drug manufacturers do not take governmental orders (or follow commands). True, their acts must conform to federal regulations, but they are under no duty, or direction to act … [ These defendants] have neither shown nor suggested that their actions … were taken at the behest of a federal officer. Stated simply, they were not directed to act, either by law or by contract; they did so of their own volition. Accordingly, the

integrity of the federal sovereign is not compromised by suit against them in state court.

*Jamison, 251* F.Supp.2d at 1327–27 (quoting *Little*, 227 F.Supp.2d at 861). In fact, in reaching this conclusion, both courts explicitly rejected all four of the specific analogies that Curon contends are appropriate.[11] As the *Jamison* court explained, manufacturers whose designs and labeling are subject to FDA approval "are for-profit corporations that do not derive their primary income from federal funding," and therefore "are not government contractors, delivering either a product or a service to the United States, or to beneficiaries designated by the government. Finally, [unlike federal licensees,] the defendants do not operate as a public utility under the direct control of the federal government." *Id.* In keeping with this logic, the court also concludes that Curon's conduct in manufacturing the Secca System was not performed while "acting under" a federal

---

**11.** In support of its position, Curon cites to *Fung v. Abex Corp.*, 816 F.Supp. 569 (N.D.Cal. 1992) (government contractor defense); *Holton v. Blue Cross & Blue Shield of South Carolina*, 56 F.Supp.2d 1347 (M.D.Ala.1999) (managed-care companies); *Texas v. Nat'l Bank of Commerce of San Antonio*, 290 F.2d 229 (5th Cir.1961) (national banks); *Teague v. Grand River Dam Auth.*, 279 F.Supp. 703 (N.D.Okla.1968) (federal licensee). The defendant in *Jamison* advanced the same arguments, supported by the same case law, as those advanced by Curon in this case. As the *Jamison* court persuasively explains, *see Jamison*, 251 F.Supp.2d at 1326–27, each situation is readily distinguishable. In particular, (1) government contractors deliver "either a product or service to the United States," *id.* at 1326–27, (2) the managed-care company in *Holton* had an *actual contract* with the United States to administer insurance payments to providers of health care for dependents of armed services members, *Holton*, 56 F.Supp.2d at 1350–51, (3) the banks in *Nat'l Bank of Commerce* were "limited banking facilities" operating on military base installa-

tions, were "designated as depositories and financial agents of the United States," and were "authorized to perform only those functions enumerated in the letter granting [them] authority to act." *Nat'l Bank of Commerce*, 290 F.2d at 231, and (4) the defendant in *Teague* operated a dam under the terms of a license that was procured directly from the federal government and provided that he was "at all times … subject to the control of the Secretary of War under such rules and regulations as he may prescribe in the interests of navigation and flood control …." *Teague*, 279 F.Supp. at 704. In marked contrast, Curon is not involved in a direct contract with the federal government to provide specified products and services to the government. Rather, Curon had the right to develop its product as it chose, but could only sell that product to the public if it complied with applicable government regulations. Thus, Curon, like the defendant in Jamison, acted merely a participant in a "highly regulated industry," a fact that does not provide a viable basis for removal under 28 U.S.C. § 1442. *See Jamison*, at 1326.

officer for purposes of the federal officer removal statute.

Bearing on the third prong of *Feidt*, Curon contends that the requirement that it show "colorable federal defense" is satisfied with its defense of "preemption." As the court has discussed in detail above, preemption, i.e., the idea that federal substantive law may displace the application of state substantive law with respect to particular claim, does not have jurisdictional significance for purposes of determining the propriety of remand. *See supra* Part II.B.2. Rather, a "federal defense" for purposes of the federal officer removal statute is a defense based on the defendant's contention that he was acting under federal direction at the time of the conduct of which the plaintiff complains. *See, e.g., Feidt*, 153 F.3d at 127 (government contractor defense); *Good*, 914 F.Supp. at 1126–27. (same). In this context, the court's conclusion that Curon, as a manufacturer of FDA-regulated medical devices, was not, in fact, acting under the FDA, necessitates the finding that Curon also has no colorable claim to a federal defense. Because Curon's arguments falter on the second and third prongs of the *Feidt* inquiry, the court concludes that Curon is not a federal officer for purposes of 28 U.S.C. § 1442 and that allowing removal on this basis would be improper.

## III. CONCLUSION

The court concludes that (1) no substantial federal question is presented in the case because the FDCA, as amended by the MDA, does not provide for a private right of action, (2) the FDCA and MDA do not create an area of complete preemption, such that the state court is barred from hearing Guckin's claims, because the FDCA and MDA do not provide civil remedies for claims that fall within their scope, and there is no clear manifestation of congressional intent to permit removal on the basis that state courts will be forced to interpret federal law, and (3) the defendants in this case are all private parties who are not federal officers empowered to remove the instant case to federal court. Therefore, the court will remand the case to state court.

An appropriate order follows.

## ORDER

**AND NOW**, this 28th day of **April, 2003**, it is hereby **ORDERED** that plaintiffs' motion to remand (doc. no. 4) is **GRANTED** and the case shall be **REMANDED** to state court. The Clerk shall deliver the case file and a certified copy of the docket to the Prothonotary of the Court of Common Pleas of Philadelphia County, Pennsylvania.

**IT IS FURTHER ORDERED** that plaintiffs' motion for attorneys' fees and costs (doc. no. 4) is **DENIED**.

**AND IT IS SO ORDERED.**